## COURT OF COMMON PLEAS OF CLINTON COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | ) | NO. 175-02 |
| | ) | CRIMINAL |
| v. | ) | |
| | ) | |
| FABIAN D. SMART | ) | |
| | ) | |

*(court stamp: FILED CLINTON COUNTY, PA 2006 MAR 14 A 9:18 SHERRY L. YARRISON PROTHONOTARY & CLERK)*

### STATEMENT PURSUANT TO RULE 1925(a) OF THE PENNSYLVANIA RULES OF APPELLATE PROCEDURE

March 13, 2006

On October 14, 2004, a jury found the Defendant guilty of murder of the first degree, criminal conspiracy to commit murder of the first degree, kidnapping, and criminal conspiracy to commit kidnapping. After hearing testimony during the penalty phase, the jury deliberated but could not reach a consensus as to whether the Defendant should be sentenced to life imprisonment or death. Accordingly, on October 21, 2004, the Court sentenced the Defendant to life imprisonment. The Defendant filed post-sentence motions on November 15, 2004, which were denied on March 15, 2005, without a hearing. The Defendant filed a timely Notice of Appeal on April 7, 2005. The Court extended the time for the Defendant to file his 1925(b) Statement of Matters Complained of on Appeal until fourteen days after the filing of all the trial transcripts. He filed his Statement of Matters Complained of on appeal on December 21, 2005.

In his Statement of Matters Complained of on Appeal, the Defendant asserts that:

(1) the instances of prosecutorial misconduct, when taken together, so tainted the fairness of [the trial that he] should be granted a new trial; (2) the trial court erred in denying his motion

RICHARD N. SAXTON, JR.
PRESIDENT JUDGE

COURT OF COMMON PLEAS
25TH JUDICIAL DISTRICT
OF PENNSYLVANIA

CERTIFIED FROM THE CRIMINAL RECORDS
OF THE COURT OF COMMON PLEAS AT
LOCK HAVEN, PA THIS ____ DAY
OF _____ 2006

SHERRY L. YARRISON, Clerk of Courts
Clinton County, PENNSYLVANIA

1

to declare Clinton County's jury pool in violation of 42 Pa.C.S.A. §4521(a), 4521(d), 4524

and the Sixth Amendment to the United States Constitution; (3) the trial court erred in

denying his motion for change of venue or venire; (4) the verdict was against the weight of

the evidence; and (5) the trial court erred by trying the Defendant before a death qualified

jury during the merits phase of the trial which deprived him of a trial before a cross-section

of the community.  The Court will discuss each of these assertions in turn.

## I. ALLEGATIONS OF PROSECUTORIAL MISCONDUCT

First, the Defendant claims that the instances of prosecutorial misconduct so tainted

the fairness of the trial that he should be granted a new trial.  He raises twenty-one instances

of alleged prosecutorial misconduct.  Although he concedes that none of the individually

identified acts standing alone would warrant a new trial, the Defendant claims that the

"accumulated taint occasioned by each of these individual acts serve to deprive him of a fair

trial."  The Supreme Court of Pennsylvania rejected the "accumulated taint" argument in

*Commonwealth v. Freeman,* 827 A.2d 385, 416 (Pa. 2003) stating that "no number of failed

claims may collectively attain merit if they could not do so individually."

Nevertheless, the Court has reviewed each of the twenty-one allegations of

prosecutorial misconduct and will discuss each one in turn.  Before doing so, however, the

Court notes it is only when the prosecuting attorney intentionally subverts the court process

by making comments that prejudice the jury, causing them to harbor a fixed bias and

hostility toward the defendant so that they would be unable to objectively weigh the

evidence and render a true verdict, that a new trial is appropriate. *Commonwealth v. Ragan,*

743 A.2d 390, 403 (Pa. 2000).

RICHARD N. SAXTON, JR.
PRESIDENT JUDGE
—
COURT OF COMMON PLEAS
25TH JUDICIAL DISTRICT
OF PENNSYLVANIA
COURT HOUSE
LOCK HAVEN, PA 17745

The Defendant's first allegation of prosecutorial misconduct concerns the testimony of the Commonwealth's witness, Sergeant Steve Fultz of the Pennsylvania State Police. On cross-examination, Sergeant Fultz testified there were no tire impressions matching the Defendant's car found in the area where the victim's body was found in April 1999. (N.T. 9/29/2004, A.M., p. 89) On redirect, the prosecuting attorney asked Sergeant Fultz if he would expect tire tracks from the Defendant's car to remain there from January to April. (N.T. 9/29/2004, A.M., p. 91) Defense counsel objected on the grounds that the question was leading and that it assumed facts not in evidence.

In its opening instructions, the Court informed the jury that

> Statements made by the attorneys do not constitute evidence. The questions which counsel put to witnesses are not themselves evidence. Let me repeat that again. The questions which the attorneys put to witnesses are not themselves evidence. It is the witnesses' answers that provide the evidence for you. You should not speculate or guess that a fact may be true merely because one of the lawyers asks a question which assumes or suggests that a fact is true.

Furthermore, the Supreme Court of Pennsylvania stated in *Commonwealth v. Chambers*, 599 A.2d 630, 640 (Pa. 1991) that "the rule that a party calling a witness is not permitted to ask leading questions … is [to be] liberally construed in modern practice, with a large measure of discretion in the court to permit parties to elicit any material truth without regard to the technical considerations of who called the witness."   In the Court's opinion, the attorney for the Commonwealth was merely attempting to elicit a material truth when he asked the witness whether he would expect tire tracks to remain from January to April.

Defendant's second allegation concerns the testimony of Jamie Allen, who testified on direct that the Defendant told him that he, the Defendant, had killed the victim and how he, the Defendant, killed the victim. Defense counsel cross-examined Allen extensively,

RICHARD N. SAXTON, JR.
PRESIDENT JUDGE

COURT OF COMMON PLEAS
25TH JUDICIAL DISTRICT
OF PENNSYLVANIA
COURT HOUSE
LOCK HAVEN, PA 17745

and he admitted that he had lied to the police several times because, at that point, he believed it was in his best interest to lie. (N.T. 9/30/04, A.M., p. 59) On redirect, the prosecuting attorney questioned Allen about this particular statement and asked Allen, "Would not getting killed, that would be in your best interest, too, wouldn't it?" Defense counsel objected to the form of the question. The Court sustained the objection and told the jury to ignore the question after which the prosecuting attorney withdrew the question. Since the witness did not answer the question, the Defendant was not prejudiced by the admission of any improper evidence.

In the Defendant's third allegation of prosecutorial misconduct, he asserts that the prosecuting attorney deliberately disobeyed the Court's ruling concerning a statement made by Nicole Killinger to Detective Charles Shoemaker. (N.T. 9/30/2004, A.M., p. 88-93). The Court informed the prosecuting attorney that he could not ask Detective Shoemaker about the **content** of a statement given by Nicole Killinger. The prosecuting attorney then asked Detective Shoemaker, "And had you been advised at some point during the course of the investigation that Jamie Allen had told Nicole Killinger what Fabian Smart said about the murder of Jason McMann?" The purpose of the question was not to elicit the content of the statement but rather only that she had made such a statement and when she had made the statement.[1] The asking of the question does not constitute prosecutorial misconduct.

Defendant's fourth allegation of prosecutorial misconduct concerns the testimony of Pennsylvania State Trooper David Rausher. Defense counsel cross-examined Trooper Rausher extensively about all of the tips he did not follow up in his investigation, the tests

RICHARD N. SAXTON, JR.
PRESIDENT JUDGE

COURT OF COMMON PLEAS
25TH JUDICIAL DISTRICT
OF PENNSYLVANIA
COURT HOUSE
LOCK HAVEN, PA 17745

---

[1] Later that day, the prosecuting attorney and defense counsel stipulated that Nichole Killinger made an audio-taped statement and stipulated as to the content of the transcription, the pertinent parts of which were read into the record by agreement of counsel.

he did not order to be performed, and the witnesses he did not interview.  On redirect, the

prosecuting attorney said to Trooper Rausher, "Gee, I thought you did a pretty good

investigation."  (N.T. 10/4/04, P.M., p. 142-143)  Defense counsel objected and the Court

sustained the objection and told the jury to disregard the question.  Again, the jury was

informed several times that the questions attorneys ask are not evidence.  Furthermore,

Trooper Rausher did not answer the question, so no improper evidence was admitted.

The Defendant's fifth allegation of prosecutorial misconduct concerns a question the

prosecuting attorney asked of Dr. Wayne Ross, the Commonwealth's forensic pathologist,

on redirect.  The prosecuting attorney asked Dr. Ross if he was aware that Dr. Samuel Land,

who had been the Commonwealth's forensic pathologist initially, had been a forensic

pathologist for one year at the time he conducted his examination.  (N.T. 10/5/2004, A.M.,

p. 81)  The Defendant objected to the Commonwealth attorney's suggestion that Dr. Land

was inexperienced and the Court instructed the jury to ignore the statement.  The

Commonwealth attorney stated that he would support the statement with testimony later;

however, the next day he discovered he was wrong.  The Court informed the jury as follows:

> Ladies and gentlemen, before we begin, I want to – following some
> discussion, I want to point out to you that yesterday Mr. McGettigan
> had asked Dr. Wayne Ross if he, Dr. Ross, was aware that at the time
> Dr. Land conducted his examination of the body, that Dr. Land had
> been a forensic pathologist for about one year.  Now Mr. McGettigan
> had been advised that that was the case.  However, he discovered this
> morning that he was wrong, and in fact, Dr. Land had been and has
> been a full-time practicing forensic pathologist since 1993.  And I just
> wanted you folks to know that.  (N.T. 10/06/2004, A.M., p. 3)

RICHARD N. SAXTON, JR.
PRESIDENT JUDGE

COURT OF COMMON PLEAS
25TH JUDICIAL DISTRICT
OF PENNSYLVANIA
COURT HOUSE
LOCK HAVEN, PA 17745

In the Court's opinion, the jury was adequately informed about the error, and the only person who might have been prejudiced by the incident was the prosecuting attorney, not the Defendant.

Defendant's sixth allegation of prosecutorial misconduct concerns the testimony of defense witness, Duwaine Duck. Mr. Duck testified that he was plowing snow on Lily Pond Road on February 4 and February 6, 1999. On one of those days, he noticed tire tracks in the snow and the footprints of three individuals. It appeared to him that the car had become stuck in the snow and that the people inside had gotten out of the vehicle. The tracks then showed the vehicle had turned around and left Lily Pond Road. (N.T. 10/06/2004, A.M., p. 35) After McMann's body was found in April, Mr. Duck thought his observations might have some significance, so he informed the police. On cross-examination, the prosecuting attorney asked the witness, "Okay. Somebody got lost. Went up Lily Pond, didn't know where they were, turned around, drove out." The witness answered, "I believe." Defense counsel objected to the form of the question and the Court sustained the objection. (N.T. 10/06/2004, A.M., p. 42-43) The Commonwealth's attorney was asking if his statement was a plausible explanation for the tracks. The question does not constitute prosecutorial misconduct.

The Defendant's seventh allegation of prosecutorial misconduct concerns the same witness, Duwaine Duck. Mr. Duck confirmed, on cross-examination, that he used to be a hunter. The prosecuting attorney asked him, "And there would probably be enough snow, well, in your hunting experience, somebody's laying down flat down there at the bottom and snow covering that body, you couldn't even see it." (N.T. 10/06/2004, A.M., p. 43) Defense counsel objected after which the prosecuting attorney withdrew the question. The

RICHARD N. SAXTON, JR.
PRESIDENT JUDGE

COURT OF COMMON PLEAS
25TH JUDICIAL DISTRICT
OF PENNSYLVANIA
COURT HOUSE
LOCK HAVEN, PA 17745

Court instructed the jury to ignore the question.  The witness did not answer, so the Defendant was not prejudiced by the admission of any improper evidence.

Defendant's eighth allegation concerns the cross-examination of Kristin Hull.  The prosecuting attorney asked her about a picture that had been taken five years prior to trial. She testified that she never thought about the picture until the private investigator hired by defense counsel discussed it with her.  She said that as soon as she saw the picture, she remembered that day exactly.   When the prosecuting attorney asked her another question, which she could not answer, he asked her, "If you spoke with the private investigator, would that help you?" (N.T. 10/6/2004, A.M., p. 78 – 80) Counsel for the Defendant objected to the question, the Court sustained the objection, and the prosecuting attorney apologized. While the question may have been sarcastic, it is not the sort of statement that would prejudice the jury and cause them to be biased or hostile to the Defendant.  In addition, the witness did not answer, so no improper evidence was admitted.

The Defendant's ninth allegation of prosecutorial misconduct concerns a question asked by the prosecutor, on cross-examination, to Donald Walker, Clinton County Coroner. The prosecuting attorney elicited from Mr. Walker that the District Attorney had suggested Dr. Wayne Ross for the postmortem examination of the victim.  He asked Mr. Walker if the District Attorney had suggested Dr. Ross because "he just was completing or had completed a kind of a complex baby murder investigation in which Dr. Ross had been the medical examiner?"  (N.T. 10/07/2004, A.M., p. 24)  Defense counsel objected to the form of the question after which the Court sustained the objection.  The prosecuting attorney withdrew the question.  The Court emphasized throughout the trial that attorney's questions were not evidence, that only the answers were evidence.  The witness did not respond to this question.

RICHARD N. SAXTON, JR.
PRESIDENT JUDGE
—
COURT OF COMMON PLEAS
25TH JUDICIAL DISTRICT
OF PENNSYLVANIA
COURT HOUSE
LOCK HAVEN, PA 17745

In any event, it is difficult to comprehend how the asking of this question could cause the jury to be biased or hostile toward the Defendant.

In Defendant's tenth allegation, he objects to the question asked by the prosecuting attorney to Neal Haskell, the defense forensic entomology expert. Dr. Haskell agreed with the prosecuting attorney that as a scientist, it is important to gather as much data as possible about the event in question. (N.T. 10/08/2004, A.M., p. 42)  The prosecuting attorney then asked Mr. Haskell if he had ever asked for the statements of Willie Williams, Jamie Allen, Quincy Teel, or Jermaine Ballard, or talk to the Defendant.  Defense counsel objected and requested a mistrial.  The prosecuting attorney argued that the questioning was relevant because if Mr. Haskell testified that it is important to gather as much data as possible, yet he did not review the statements of the co-conspirators or talk to the Defendant, then he did not have all the data available concerning the event inferring that his conclusions would lack validity. (N.T. 10/08/2004, A.M., p. 46 – 50)  The Court denied the motion for a mistrial but instructed the prosecuting attorney to conclude this line of questioning.  In the Court's opening and closing instructions, it informed the jury that the Defendant did not have to take the witness stand or offer any witnesses on his behalf.  The Defendant was not prejudiced by the above incident.

Defendant's eleventh allegation of prosecutorial misconduct concerns the testimony of the same witness, Neal Haskell.  On cross-examination, Mr. Haskell testified that he was a member of several professional organizations.  The prosecuting attorney asked him whether there had been efforts to remove the witness from any of those organizations. (N.T. 10/8/2004, A.M., p. 66 – 67)  The witness responded that there had been no such efforts.

RICHARD N. SAXTON, JR.
PRESIDENT JUDGE

COURT OF COMMON PLEAS
25TH JUDICIAL DISTRICT
OF PENNSYLVANIA
COURT HOUSE
LOCK HAVEN, PA 17745

Defense counsel did not object to this question at trial.  Therefore, this issue is waived.

*Commonwealth v. Duffy*, 832 A.2d 1132, 1136 (Pa. Super. 2003).

Defendant's twelfth allegation concerns the testimony of Dr. Theodore Siek, the

defense toxicology expert.  On direct examination, Dr. Siek testified that he disagreed with

Dr. Wayne Ross's conclusion that gamma-hydroxybutyric acid (GHB) levels occur naturally

in a body after death.[2]  (N.T. 10/08/2004, P.M., p. 19)  He further testified that there was a

"reasonable possibility" that McMann ingested GHB before he died, but that he could not

say within a reasonable degree of scientific certainty.  (N.T. 10/08/2004, P.M., p. 51-52)

On cross-examination, the prosecuting attorney asked him if he was in any position to argue

with the conclusion of Dr. Ross that the cause of death was the result of blunt trauma?

Defense counsel objected to the question and the Court sustained the objection.    The Court

informed the jury throughout the trial that questions of counsel are not evidence, that only

the answers are evidence.  Because the witness did not answer the question, no improper

evidence was admitted.

Defendant's thirteenth allegation concerns a question asked by the prosecuting

attorney to defense witness Angela Weber.  Ms. Weber testified that she had known the

Defendant for a couple years and that he had been her next-door neighbor.  The prosecuting

attorney asked, "Which one of your friends dated him?"  (N.T. 10/8/2004, P.M., p. 90)

Because defense counsel did not object to this question at trial, it is also waived.

Defendant's fourteenth allegation of prosecutorial misconduct concerns a statement

made by the prosecuting attorney to defense witness, Gary Rini, a forensic science

IARD N. SAXTON, JR.
PRESIDENT JUDGE

URT OF COMMON PLEAS
5TH JUDICIAL DISTRICT
OF PENNSYLVANIA
COURT HOUSE
OCK HAVEN, PA 17745

---

[2]  The Defendant's theory was that Dr. Samuel Land, the Commonwealth's original forensic pathologist, was correct when he opined that McMann died from a GHB overdose combined with hypothermia.  However, Dr. Land testified at trial that he was wrong and that, in light of the literature, no reasonable forensic pathologist could conclude GHB was the cause of death.  (N.T. 10/08/2004, P.M., p. 5)

consultant. The prosecuting attorney asked, "Okay. How many murders have you served as the lead investigator on? I'm up around a hundred. Where are you at?" (N.T. 10/11/2004, A.M., p. 59) The Defendant claims that the prosecuting attorney was attempting to elevate his status in the eyes of the jury. While there may have been a certain amount of arrogance in the prosecuting attorney's statement, the Defendant did not object to it at trial. Therefore, he has waived this issue.

Defendant's fifteenth allegation of prosecutorial misconduct concerns the cross-examination of Gary Rini, forensic science consultant. The prosecuting attorney referred to a soil sample as being "identical" to the one found in the Defendant's car instead of "similar in color and texture and characteristics," which was the exact wording in the lab report. Defense counsel objected, but the prosecuting attorney corrected himself before the Court could rule on the objection. (N.T. 10/11/2004, A.M., p. 68) Eventually, the prosecuting attorney and defense counsel reached a stipulation concerning the soil, which the Court read to the jury.

> All right. And there's another stipulation that I wish to read to you. During the testimony of Mr. Rini, it was inadvertently stated that the dirt found in the Defendant's trunk was identical to the dirt found on – the dirt at Lily Pond Road. And Counsel have agreed that you be informed that the fact of the matter is that the dirt found in the car is common dirt and can be found in many places. (N.T. 10/12/2004, A.M., p. 12-13)

In the Court's opinion, the error was corrected, the jury was informed, and the Defendant was not prejudiced by the prosecutor's misstatement.

The Defendant's sixteenth, seventeenth, eighteenth, and nineteenth allegations concern the testimony of Christine Cecconi (formerly Christine Hostrander). Allegation

RICHARD N. SAXTON, JR.
PRESIDENT JUDGE

COURT OF COMMON PLEAS
25TH JUDICIAL DISTRICT
OF PENNSYLVANIA
COURT HOUSE
LOCK HAVEN, PA 17745

sixteen concerns a question asked by the Commonwealth's attorney on cross-examination,

Ms. Cecconi had testified on direct examination that she used to date Jason McMann in high

school and had considered resuming the relationship.  She testified that Jason McMann

came into the Bottle Shop where she worked about once every week or two, the last time

being February 2, 1999, which was after the Defendant was alleged to have killed him.  On

cross-examination, the prosecuting attorney questioned Ms. Cecconi about the accuracy of

her recollection as to the date she last saw Jason McMann.  He asked, "And at the time that

you reported to the police about seeing Jason just a few days before that, that you were still

under the emotional impact of learning of his death; isn't that true?  Or did you get over it

that quick?" (N.T. 10/11/04, A.M., p. 144)  Defense counsel objected to the form of the

question and it was stricken from the record.  The prosecuting attorney stated that he did not

mean the question to sound like it did.   The question, although somewhat sarcastic, would

not cause the jury to be biased or hostile toward the Defendant.

The Defendant claims in allegation seventeen that the prosecuting attorney attempted

to undermine Ms. Cecconi's testimony by asserting that she had heard rumors about him

being dead at the time she spoke to the police.  (N.T. 10/11/204, A.M., p. 144- 146)  The

Defendant did not object at trial to this questioning.  Accordingly, he has waived this claim.

In allegation eighteen, the Defendant claims that the prosecuting attorney suggested

to Ms. Cecconi on cross-examination that she last saw the victim wearing a black t-shirt.

McMann's parents had removed this particular t-shirt from his apartment after his

disappearance.  (N.T. 10/11/2004, A.M., p. 151)  The Defendant claims that the prosecuting

attorney did not have a good faith basis for asking the question.  However, on direct

examination, Ms. Cecconi testified that when she last saw McMann, he was "wearing a

RICHARD N. SAXTON, JR.
PRESIDENT JUDGE

COURT OF COMMON PLEAS
25TH JUDICIAL DISTRICT
OF PENNSYLVANIA
COURT HOUSE
LOCK HAVEN, PA 17745

black t-shirt with a picture of a heavy metal group on the front of it." (N.T. 10/11/2004, A.M., p. 120) The prosecuting attorney did have a good faith basis for asking the question. Furthermore, the Defendant did not object to this question, so the issue is waived.

Defendant maintains in allegation nineteen that the prosecuting attorney did not have a good faith basis for asking if she had left her employment "because of stress and disorders" connected with her pregnancy. (N.T. 10/11/2004, A.M., p. 152) Ms. Cecconi responded that she was fired from her employment because

> I had asked for a week off because I was suffering through severe postpartum depression due to my pregnancy, being taken out of my management position, losing my apartment, and trying to stay on my feet. So I was on my medication. I was going through therapy to try to get out of my relationship, to get a better job, to better myself, and to better my life.

She explained that her employer told her that if she needed a week off, she should not come back. Her testimony indicated that she had experienced stress and disorders connected with her pregnancy. Thus, the prosecuting attorney did have a good faith basis for asking the question. However, the Defendant did not object to this question at trial, so he has waived this claim.

The Defendant's twentieth allegation of prosecutorial misconduct concerns three alleged discovery violations committed by the prosecuting attorney. The Defendant claims that he was not given all of the negatives of pictures taken by Rosa Rodriguez at a party. The prosecuting attorney stated two times that he did not have the negatives, but that he would try to get them if they could be found. (N.T. 10/04/2004, A.M., p. 12-13) The Defendant also claims he was not given any bench notes or other writings made by Dr. Ross concerning the autopsy and any bills submitted by Dr. Ross. According to Pennsylvania

RICHARD N. SAXTON, JR.
PRESIDENT JUDGE
—
COURT OF COMMON PLEAS
25TH JUDICIAL DISTRICT
OF PENNSYLVANIA
COURT HOUSE
LOCK HAVEN, PA 17745

Rule of Criminal Procedure 573(B), the Commonwealth must provide only evidence that is within the possession and control of the attorney for the Commonwealth. Inasmuch as the negatives requested were not within the possession and control of the attorney for the Commonwealth, he was not obligated to give them to the Defendant.

On cross-examination, defense counsel asked Dr. Ross if he created bench notes or handwritten notes. Dr. Ross answered, "I may have. Sure." On redirect examination, the prosecuting attorney asked Dr. Ross if defense counsel had access to all of the information that Dr. Ross had access to. Dr. Ross responded, "Yes, they did." There is no merit to this alleged discovery violation. (N.T. 10/05/2004, A.M., p. 77-79)

With regard to the alleged discovery violation concerning the bill submitted by Dr. Ross, this allegation is simply irrelevant and has nothing whatever to do with the Defendant's guilt or innocence. It does not deserve further comment.

In the Defendant's final allegation of prosecutorial misconduct, he argues that the prosecuting attorney's comments in closing arguments were inflammatory and prejudicial. The Court has reviewed the transcript of the closing arguments and finds this argument unpersuasive. They are not the sort of comments that the higher courts have found objectionable. For example, in *Commonwealth v. Starks,* 387 A.2d 829 (Pa. 1978), the Supreme Court of Pennsylvania granted Starks a new trial because the prosecutor placed unnecessary emphasis on the involvement of drugs in the case, when that issue was only peripheral to the case. In another case, *Commonwealth v. Chambers,* 599 A.2d 630, 644 (PA. 1991), the Supreme Court of Pennsylvania cautioned that references to the Bible or other religious writing is reversible error *per se.*

RICHARD N. SAXTON, JR.
PRESIDENT JUDGE

COURT OF COMMON PLEAS
25TH JUDICIAL DISTRICT
OF PENNSYLVANIA
COURT HOUSE
LOCK HAVEN, PA 17745

In contrast, the statements made by the Commonwealth's attorney in the present case are all relatively mild. The prosecuting attorney, like defense counsel, must be permitted to vigorously present and argue his case. Not every sarcastic or intemperate statement constitutes prosecutorial misconduct. In this particular case, none of the Commonwealth attorney's remarks would cause the jury to have bias or hostility toward the defendant, such that they could not weigh the evidence objectively and render a true verdict. The Defendant's twenty-one allegations of prosecutorial misconduct are without any merit whatsoever.

## II. ALLEGATION THAT THE JURY POOL WAS UNCONSTITUTIONAL

In the Defendant's second issue in his Statement of Matters Complained of on appeal, he contends that the Court erred when it denied his second Motion to Declare Clinton County's Jury Pool in Violation of 42 Pa. C.S.A. §4521(a), 4521(d), 4524 and the Sixth Amendment to the United States Constitution. The Court granted the Defendant's first motion on November 24, 2003, because, at that time, the jury commissioners' master list of prospective jurors were chosen solely from the occupational tax rolls, which was not in accordance with 42 Pa. C.S.A. §4521(a). The Court ordered the jury commissioners to revise the jury pool to include voter registration lists as well as any other lists deemed appropriate under §4521(a). The jury commissioners did as the Court ordered, and the jury that was chosen in Defendant's case consisted of qualified voters from the combined voter registration list and the occupational tax rolls list. Furthermore, even if the Court had not ordered the jury commissioners to revise the pool, 42 Pa. C.S.A. §4527 states that a trial by jury and a verdict in any matter constitutes a waiver of any errors or omissions in the selection of jurors.

RICHARD N. SAXTON, JR.
PRESIDENT JUDGE
COURT OF COMMON PLEAS
25TH JUDICIAL DISTRICT
OF PENNSYLVANIA
COURT HOUSE
LOCK HAVEN, PA 17745

The Court also notes that the Defendant did not follow proper procedure with regard to the motion concerning the jury pool. The Court issued an Administrative Order concerning jury selection for the Defendant's trial on July 29, 2004, which was sent to all parties and counsel. According to 42 Pa. C.S.A. §4526(a), within ten days after publication of the array, a party may petition the court to stay the proceedings in the case where he is a party and to select a new jury array, or for other appropriate relief, on the ground of failure to substantially comply with this subchapter. Section 4526(c) states that this is the exclusive remedy by which a person accused of a crime may challenge an array of jurors on the ground that the array was not selected in conformity with this subchapter. The Defendant did not file his second Motion to Declare Clinton County's Jury Pool in Violation of §4521(a) and the Sixth Amendment of the United States Constitution until August 27, 2004, almost one month after publication of the array and less than three weeks before jury selection was scheduled to begin. Furthermore, the Defendant did not request a stay of the proceedings as required by §4526(a).

### III. ALLEGATION THAT THE COURT ERRED BY DENYING HIS MOTION FOR A CHANGE OF VENUE OR VENIRE

Third, the Defendant contends that the trial court erred in denying his Motion for Change of Venue or Venire based on pre-trial publicity. The murder of Jason McMann occurred in January 1999. Police arrested the Defendant in 2002 and his trial occurred in September 2004. Even if the Court were to presume pre-trial prejudice, which it does not, the Supreme Court of Pennsylvania has held that:

> A change of venue is not warranted unless the defendant also shows that the pre-trial publicity was so extensive, sustained and pervasive that the

RICHARD N. SAXTON, JR.
PRESIDENT JUDGE

COURT OF COMMON PLEAS
25TH JUDICIAL DISTRICT
OF PENNSYLVANIA
COURT HOUSE
LOCK HAVEN, PA 17745

15

community must be deemed to have been saturated with it, **and** that there was insufficient time between the publicity and the trial for any prejudice to have dissipated." *Commonwealth v. Robinson*, 864 A.2d 460, 484 (Pa. 2005).

In order to determine whether there has been a sufficient cooling period, the Court must determine what the panel of jurors has said about its exposure to the publicity. In the present case, there is no question that the vast majority of jurors had heard of the case, either by reading the newspaper or watching "America's Most Wanted" television program that aired three episodes featuring the case. The record shows that during individual voir dire, defense counsel questioned all potential jurors extensively as to their knowledge of the case, i.e., whether they had seen any of the "America's Most Wanted" programs, whether they had formed a fixed opinion, and, if so, whether they could set that opinion aside and listen to the facts of the case and decide the case solely on the testimony and evidence submitted at trial. Each juror selected indicated that he/she could hear the case fairly without bias.[3] Therefore, the Court found that there had been a sufficient cooling off period and that a change of venue or venire was not warranted.

## IV. ALLEGATION THAT THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE

Fourth, the Defendant argues that the verdict was against the weight of the evidence. The Defendant correctly states in his brief that "the determination of the weight of the evidence exclusively is within the province of the fact finder, who may believe all, part, or none of the evidence." *Commonwealth v. McCloskey*, 835 A.2d 801 (Pa. Super. 2003). Then, he goes on to criticize the jury for finding the Defendant guilty. Ultimately, it is clear that the jury believed the testimony of the Defendant's co-conspirators. Jermaine Ballard

ICHARD N. SAXTON, JR.
PRESIDENT JUDGE

COURT OF COMMON PLEAS
25TH JUDICIAL DISTRICT
OF PENNSYLVANIA
COURT HOUSE
LOCK HAVEN, PA 17745

---

[3] The Court notes that the Defendant only used seventeen of his peremptory challenges.

16

and Quincy Teel both testified that they helped put Jason McMann's unconscious body into the trunk of the Defendant's car, after which they refused to participate any further. Willie Williams testified that he accompanied the Defendant to a wooded area where they left Jason McMann after the Defendant attempted to shoot him, and when the gun would not work, the Defendant beat Jason McMann with a tree limb and left him to die. Another witness, Jamie Allen, testified that the Defendant told him he killed Jason McMann. On the other hand, the jury apparently determined that the defense witnesses who supposedly saw McMann alive after January 22, 1999, were unbelievable. Likewise, the jury did not find the testimony of Neal Haskell, the defense forensic entomology expert, credible. The verdict did not shock the conscience of the Court.

## V. ALLEGATION THAT DEFENDANT WAS DENIED A TRIAL BEFORE A CROSS-SECTION OF THE COMMUNITY BY TRYING HIM BEFORE A DEATH QUALIFIED JURY DURING THE MERITS PHASE OF THE TRIAL

Fifth, the Defendant claims that trying the Defendant before a death qualified jury during the merits phase of the trial deprived him of a trial before a cross-section of the community. This argument was rejected by the Supreme Court of the United States in *Lockhart v. McCree,* 476 U.S. 162, 173-184 (1986) and the Supreme Court of Pennsylvania in *Commonwealth v. McCullum,* 602 A.2d 313, 321 (Pa. 1992). This Court sees no reason to revisit the issue.

BY THE COURT:

Richard N. Saxton, Jr.          P.J.

RICHARD N. SAXTON, JR.
PRESIDENT JUDGE
_____
COURT OF COMMON PLEAS
25TH JUDICIAL DISTRICT
OF PENNSYLVANIA
COURT HOUSE
LOCK HAVEN, PA 17745

cc:     Ted McKnight, District Attorney
        Joseph E. McGettigan, III, Special Prosecutor
        Eric R. Linhardt, Esquire, 25 West Third Street, Suite 803, Williamsport, PA 17701
        Ronald C. Travis, Esquire, 161 West Third Street, Williamsport, PA 17701
        File

RICHARD N. SAXTON, JR.
PRESIDENT JUDGE
———
COURT OF COMMON PLEAS
25TH JUDICIAL DISTRICT
OF PENNSYLVANIA
COURT HOUSE
LOCK HAVEN, PA 17745

J. A18043/06

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P.65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| FABIAN DESMOND SMART | : | |
| | : | |
| Appellant | : | No. 588 MDA 2005 |

Appeal from the Judgment of Sentence January 24, 2005
In the Court of Common Pleas of Clinton County
Criminal No. 2002-00175

BEFORE: FORD ELLIOTT, P.J., STEVENS and KELLY, JJ.

MEMORANDUM:                              FILED: October 19, 2006

Appellant, Fabian Desmond Smart, appeals from the judgment of sentence imposed by the Clinton County Court of Common Pleas following his conviction by a jury of murder of the first degree,[1] kidnapping[2] and conspiracy.[3] We affirm.

On the night of January 22, 1999, Appellant got into a fight with the victim, Jason McMann. McMann had confronted Appellant on a half dozen previous occasions on behalf of a cousin, Jeffrey Stauffer, who had paid Appellant $6,000.00 (six thousand dollars) for marijuana which Appellant never delivered. That night, a fight began at a party in a football fraternity

---

[1] 18 Pa.C.S.A. § 2502(a).

[2] 18 Pa.C.S.A. § 2901.

[3] 18 Pa.C.S.A. § 903.

J. A18043/06

house at Lock Haven University, where Appellant was a football player.  The
fight spilled outside.  Appellant beat McMann unconscious and with the aid of
associates, put him in the trunk of his car, took him to a remote location
some twenty miles away, tried unsuccessfully to shoot him with a pistol that
would not fire, beat him again, and left him there to die.  McMann was
reported missing shortly afterward, but his body was not discovered until
several months later, in April.

When McMann disappeared, his family began a campaign to find him,
posting placards, offering a reward, and trying to generate as much public
interest as they could.  The case attracted attention in the local media and
was featured three times on the nationally televised program, "America's
Most Wanted."   After his body was discovered, McMann's death was
originally attributed to a drug overdose.  However, police investigating the
disappearance and death learned of Appellant's dispute with McMann.
Appellant's co-conspirators initially denied involvement but eventually
confessed.  Appellant was arrested in 2002, and at his trial in 2004, his co-
conspirators testified against him.   The death-qualified jury convicted
Appellant of all charges, but deadlocked on imposing the death penalty.  The
trial court imposed a life sentence for the murder conviction.  Post-sentence
motions were denied without hearing.  This timely appeal followed.

On appeal, Appellant raises five issues for our review:

J. A18043/06

> DID THE INSTANCES OF PROSECUTION MISCONDUCT WHEN TAKEN TOGETHER SO TAINT THE FAIRNESS OF THE TRIAL THAT APPELLANT SHOULD BE GRANTED A NEW TRIAL IN THE INTEREST OF JUSTICE?

> DID THE TRIAL COURT ERR IN DENYING APPELLANT'S MOTION TO DECLARE [THE] JURY POOL IN VIOLATION OF 42 PA.C.S.A. § 4521(A), 4521(D), 4524 AND THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION?

> DID THE TRIAL COURT ERR IN DENYING APPELLANT'S MOTION FOR CHANGE OF VENUE OR VENIRE?

> WAS THE VERDICT AGAINST THE WEIGHT OF THE EVIDENCE?

> DID TRYING THE APPELLANT BEFORE A DEATH QUALIFIED JURY DURING THE MERITS PHASE OF THE TRIAL DEPRIVE APPELLANT OF A TRIAL BEFORE A CROSS-SECTION OF THE COMMUNITY?

(Appellant's Brief at 4).

Appellant first argues that prosecutorial misconduct deprived him of a fair trial.   He cites twenty-one instances of alleged misconduct by the prosecutor, concluding that their cumulative effect was to deprive him of a fair trial.  We disagree.

> Our review of a trial court's decision to reject a claim of prosecutorial misconduct is limited to whether the trial court abused its discretion.   In considering this claim, our attention is focused on whether the defendant was deprived of a fair trial, not a perfect one.

> Not every unwise remark on a prosecutor's part constitutes reversible error.   Indeed, the test is a relatively stringent one.   Generally speaking, a prosecutor's comments do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict.   Prosecutorial misconduct, however,

- 3 -

J. A18043/06

> will not be found where comments were based on evidence or proper inferences therefrom or were only oratorical flair. In order to evaluate whether comments were improper, we must look to the context in which they were made. Finally, when a trial court finds that a prosecutor's comments were inappropriate, they may be appropriately cured by a cautionary instruction to the jury.

**Commonwealth v. DeJesus**, 787 A.2d 394, 407-08 (Pa. 2001) (citations omitted), *cert. denied,* 537 U.S. 1028 (2002).

At the outset, we note that Appellant concedes "none of the individually identified acts, standing alone, would warrant the granting of a new trial . . . ." (Appellant's Brief at 27).   Rather, Appellant argues the "accumulated taint" deprived him of a fair trial.   However, our Supreme Court has rejected the cumulative taint argument.  **See Commonwealth v. (Craig) Williams**, 615 A.2d 716, 723 (Pa. 1992); **see also Commonwealth v. (James T.) Williams**, 896 A.2d 523, 548 (Pa. 2006). Moreover, our review of each of Appellant's claims of misconduct confirms the trial court's conclusion that neither individually nor collectively do they instill the fixed hostility or bias toward Appellant that would have prevented the jury from weighing the evidence objectively and preventing a true verdict.[4]  Appellant's first argument does not merit relief.

-------------------------------------------------------

[4] Of the twenty-one incidents alleged, we note the trial court sustained nine timely objections by defense counsel before an answer was given. On several occasions the prosecutor withdrew the challenged question.  Defense counsel failed to make timely objections, and in some instances accepted the prosecutor's explanation of his basis for asking certain questions, resulting in the waiver of another six of his claims.  In two instances, defense counsel originally objected to certain testimony but later agreed to admit it by

- 4 -

J. A18043/06

Appellant's second claim argues that the composition of the jury pool violated the requirements of 42 Pa.C.S.A. § 4521(a), (d) and the Sixth Amendment to the United States Constitution.   The trial court granted Appellant's first motion to declare Clinton County's jury pool in violation and ordered the jury commissioners to include voter registration lists, as well as occupational tax rolls and other lists deemed appropriate under Section 4521(a).   However, Appellant's objection to the revised jury pool was not made within ten days and was, therefore, untimely.   Also, he failed to request a stay of proceedings pursuant to the statutory requirement:

> **Challenge to array.—**Within ten days after publication of the array a party to a matter on a then published list of cases scheduled for jury trial may petition the court to stay the proceedings in the case where he is a party and to select a new jury array, or for other appropriate relief, on the ground of failure to substantially comply with this subchapter.

42 Pa.C.S.A. § 4526(a). This statutory remedy is exclusive:

> **Exclusive remedy.—**Unless and until suspended or superseded by general rules, the procedures prescribed by this section are the exclusive means by which a person accused of a crime, the Commonwealth or a party in a civil case may challenge an array of jurors on the ground that the array was not selected in conformity with this subchapter.

42 Pa.C.S.A. § 4526(c).

Additionally, also by statute, the trial by jury and its rendition of a verdict constitute a waiver of all such errors and omissions.   ***See*** 42

---

stipulation.  Twice the prosecutor assumed incorrect facts, which he later corrected and for which he apologized to the jury.  The trial court gave the jury several cautionary instructions that comments and questions by counsel are not evidence.  The trial court's well-reasoned opinion discusses and properly disposes of each claim.  (**See** Trial Court Opinion, filed March 14, 2006, at 2-13).  We therefore adopt the trial court's opinion as to these claims.

J. A18043/06

Pa.C.S.A. § 4527.[5]  Because he filed his second objection in an untimely manner, failed to comply with all statutory requirements and because the trial by jury and its verdict waived any errors, Appellant's second claim is waived.

In Appellant's third issue he challenges the denial of his motion for change of venue or venire based on pre-trial publicity.   He argues the ongoing investigation of McMann's disappearance, death and discovery, as well as the complications arising from an initial conclusion of drug overdose to its transition into a murder case, generated extensive local media coverage, which he characterizes as sensational and inflammatory, that saturated Clinton County, making it impossible to select a fair and impartial jury there.  We disagree.

"The trial court's decision on appellant's motions for change of venue/venire rests within the sound discretion of the trial judge, whose ruling thereon will not be disturbed on appeal absent an abuse of that discretion." **Commonwealth v. Marinelli**, 690 A.2d 203, 213 (Pa. 1997), *cert. denied*, 523 U.S. 1024 (1998).

---

[5] § 4527:   **Effect of verdict on jury selection errors**

Except as otherwise prescribed by general rule, errors and omissions in the selection of jurors under this subchapter shall not constitute grounds to set aside any jury verdict in any civil or criminal matter or to arrest, reverse, open or strike any judgment entered on a jury verdict, and the trial by jury and its rendition of a verdict in any matter shall constitute a waiver of all such errors and omissions.

42 Pa.C.S.A. § 4527.

J. A18043/06

> Even where pre-trial prejudice is presumed, a change of venue or venire is not warranted unless the defendant also shows that the pre-trial publicity was so extensive, sustained, and pervasive that the community must be deemed to have been saturated with it, and that there was insufficient time between the publicity and the trial for any prejudice to have dissipated.  In testing whether there has been a sufficient cooling period, a court must investigate what a panel of prospective jurors has said about its exposure to the publicity in question.   This is one indication of whether the cooling period has been sufficient.  Thus, in determining the efficacy of the cooling period, a court will consider the direct effects of publicity, something a defendant need not allege or prove. Although it is conceivable that pre-trial publicity could be so extremely damaging that a court might order a change of venue no matter what the prospective jurors said about their ability to hear the case fairly and without bias, that would be a most unusual case.   Normally, what prospective jurors tell us about their ability to be impartial will be a reliable guide to whether the publicity is still so fresh in their minds that it has removed their ability to be objective.  The discretion of the trial judge is given wide latitude in this area.

**Commonwealth v. Robinson**, 864 A.2d 460, 484 (Pa. 2004) (quoting

**Commonwealth v. Drumheller**, 808 A.2d 893, 902 (Pa. 2002), *cert.*

*denied*, 539 U.S. 919, (2003)), *cert. denied*, ___ U.S. ___, 126 S.Ct. 559

(2005).

Instantly, the trial court found that there had been a sufficient cooling–off

period so that a change of venue or venire was not warranted.  The only

jurors selected indicated they could hear the evidence fairly and without

bias; prospective jurors who indicated they could not were excused.

Appellant did not exhaust his peremptory challenges.  We also note that

while the murder occurred on January 22-23, 1999, for a variety of reasons

J. A18043/06

the trial did not begin until September of 2004, well over five years later.  In

view of the length of time over which the various stages of the investigation

become known, and the precautions taken to allow the defense to select an

impartial jury, we conclude the trial court did not abuse its discretion.

Accordingly, there is no basis to disturb its finding.  ***See id.; see also***

***Marinelli***, ***supra***.  Appellant's third issue does not merit relief.

Fourth, Appellant challenges the verdict as against the weight of the

evidence.[6]

> The weight of the evidence is exclusively for the finder of
> fact who is free to believe all, part, or none of the evidence
> and to determine the credibility of the witnesses.   An
> appellate court cannot substitute its judgment for that of
> the finder of fact.   Thus, we may only reverse the lower
> court's verdict if it is so contrary to the evidence as to
> shock one's sense of justice.   Moreover, where the trial
> court has ruled on the weight claim below, an appellate
> court's role is not to consider the underlying question of
> whether the verdict is against the weight of the evidence.
> Rather, appellate review is limited to whether the trial
> court palpably abused its discretion in ruling on the weight
> claim.

***Commonwealth v. Champney***, 832 A.2d 403, 408 (Pa. 2003) (citations

omitted), *cert. denied,* 542 U.S. 939 (2004).

Instantly, our review of the record confirms the jury had ample

evidence, including the testimony of four accomplices, on which to base its

guilty verdict.  The jury was free to believe all, part or none of the evidence

---

[6]   We note that, after the verdict, while the jury was deliberating on the
penalty, Appellant moved for "a direct verdict of life based on the closed
record." (***See*** N.T. Trial, 10/20/04, at 3).  The trial court denied the motion.

- 8 -

J. A18043/06

to resolve the various inconsistencies alleged by Appellant. ***Id.***  We find no basis on which to conclude the trial court abused its discretion in deciding that the verdict did not shock its conscience.  Appellant's weight claim does not merit legal relief.

Appellant's final claim is that he was deprived of a trial before a cross section of the community because this jury was death-qualified.  Appellant concedes his argument to be a "novel concept" in Pennsylvania. (Appellant's Brief at 55).  In essence, Appellant argues by reference to the procedures and case law of other states that he should have had one jury for the guilt phase and a second jury for the penalty phase.  Citing unspecified studies, he claims that death-qualified juries are biased toward conviction.   He asserts that the procedure employed in his trial "is not only inherently unfair, but runs afoul of [his] rights under both the State and Federal Constitution [sic]." (***Id.*** at 56).

The United States Supreme Court has held that the Constitution does not prohibit states from "death qualifying" juries in capital cases. ***See Lockhart v. McCree***, 476 U.S. 162, 173 (1986).  Our Supreme Court has also held:

> Appellant next asserts that he was deprived of a fair and impartial jury from a representative cross section of the community because his case was decided by a death-qualified jury. Specifically, appellant maintains that a death-qualified jury is more prone to convict a defendant than a jury that is not death-qualified. This precise argument has been rejected by both the United States

- 9 -

J. A18043/06

> Supreme Court and this Court. *See Lockhart*, [*supra*]; *Commonwealth v. Bryant*, [ ] 574 A.2d 590 ([Pa.] 1990); *Commonwealth v. Sneed*, [ ] 526 A.2d 749 ([Pa.] 1987); *Commonwealth v. Peterkin*, [ ] 513 A.2d 373 ([Pa.] 1986), *cert. denied*, 479 U.S. 1070 [ ] (1987). Appellant presents no argument which persuades us to alter this course; thus, this assertion must fail.

*Commonwealth v. McCullum*, 602 A.2d 313, 321 (Pa. 1992).

Instantly, Appellant's mere bald assertion of a violation of an unspecified constitutional right fails to address the clear holdings of both *McCree* and *McCullum*. Accordingly, based on our review, and the well-reasoned opinion of the trial court, which we incorporate and adopt by reference, none of Appellant's claims merit relief and the judgment of sentence is affirmed.

Judgment of sentence affirmed.

Judgment Entered:

*James D. McCullough*
Deputy Prothonotary

Date: October 19, 2006

- 10 -

**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

COMMONWEALTH OF PENNSYLVANIA,   : No. 973 MAL 2006
                                :
                     Respondent :
                                : Petition for Allowance of Appeal from the
                                : Order of the Superior Court
            v.                  :
                                :
                                :
FABIAN DESMOND SMART,           :
                                :
                     Petitioner :

## ORDER

**PER CURIAM:**

  **AND NOW**, this 1st day of May, 2007, the Petition for Allowance of Appeal is
**DENIED**.

**TRUE & CORRECT COPY**

ATTEST: MAY 0 1 2007

NORINA K. BLYNN
CHIEF CLERK

IN THE COURT OF COMMON PLEAS OF CLINTON COUNTY, PENNSYLVANIA
CRIMINAL

COMMONWEALTH OF PENNSYLVANIA )
)
v.                            )   NO. 175 - 02 CR
)
FABIAN D. SMART               )

## ORDER DISMISSING P.C.R.A. PETITION

Before us is Defendant's timely Petition under the Post-Conviction Collateral Relief Act.

Defendant's original Petition was supplemented by an Amended Petition filed January 25, 2008,

and an oral amendment made in open court this date raising the issue of the PennDOT photo

identification card.

Initially, Defendant contends his trial counsel were ineffective in failing to compel forensic

testing of the victim's fingernail cuttings and a towel found where the victim's body was found.

Both trial attorneys, Eric Linhardt, Esquire, and Ronald Travis, Esquire, testified that the

decision not to request DNA testing of those materials was based upon considered trial strategy.

Specifically, Attorney Travis testified that he believed, based on the defense they intended to

present at trial, it would be too risky to seek DNA testing because of the possibility that the

testing would confirm the involvement of their client.  After consideration of all the evidence, we

are satisfied beyond any question that such trial strategy was reasonable and intended to be in the

best interest of Defendant.

Defendant next contends that trial and appellate counsel were ineffective in failing to

pursue his claim of racial bias based upon information provided by one of the jurors post-trial.

The juror in question brought the alleged bias to the attention of Defendant and Attorney Travis

through an exchange of correspondence and phone calls.  At the P.C.R.A. hearing, the juror

. MICHAEL WILLIAMSON
PRESIDENT JUDGE

COURT OF COMMON PLEAS
25TH JUDICIAL DISTRICT
OF PENNSYLVANIA  .
COURTHOUSE
LOCK HAVEN, PA 17745

acknowledged that all information she intended to offer concerned comments made during the course of jury deliberations. Attorney Travis testified that his discussions with the juror confirmed that the comments were made during deliberations.

Rule 606 of the Pennsylvania Rules of Evidence provides that, "A juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that verdict..." Because we believe we are precluded from considering the proffered testimony, Defendant's claim must fail.

Finally, Defendant contends he is entitled to a new trial because of newly discovered evidence: to wit, his contention that the victim secured a PennDOT photo identification card subsequent to the date of his presumed death. While we may well have found this issue not to constitute "newly discovered evidence," a check by the District Attorney and defense counsel of the Pennsylvania Department of Transportation records indicates that the most recent photo identification card for the victim was secured at noon on November 14, 1998, several months prior to the incident in question.

NOW, this 17th day of March, 2008, for the above reasons, the Petition of Fabian D. Smart for relief under the Post-Conviction Collateral Relief Act is DENIED and his Petition DISMISSED.

BY THE COURT:

J. Michael Williamson, President Judge

MICHAEL WILLIAMSON
PRESIDENT JUDGE

COURT OF COMMON PLEAS
25TH JUDICIAL DISTRICT
OF PENNSYLVANIA
COURTHOUSE
LOCK HAVEN, PA 17745

xc:   Michael F. Salisbury, District Attorney
      David A. Strouse, Esquire
      Court Administrator

2

Denial of PCRA
Superior Court

J.S18015/09

JUL 1 3 2009

BY:

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| Appellee | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FABIAN DESMOND SMART, | : | |
| Appellant | : | No.  696 MDA 2008 |

Appeal from the PCRA Order March 18, 2008
In the Court of Common Pleas of Clinton County
Criminal at No(s): CP-18-CR-0000175-2002

BEFORE:   PANELLA, SHOGAN, and KELLY, JJ.

MEMORANDUM:          FILED:  July 10, 2009

Appellant, Fabian Desmond Smart, appeals from the order entered on March 18, 2008, by the Honorable Michael J. Williamson, Court of Common Pleas of Clinton County, which denied his petition for relief filed pursuant to the Post-Conviction Relief Act (PCRA), 42 PA.CONS.STAT.ANN. §§ 9541-9546. After careful review, we affirm.

The record in the case *sub judice* reveals that, at the conclusion of the jury trial on October 21, 2004, Smart was convicted of murder of the first degree[1], conspiracy to commit murder of the first degree[2], kidnapping[3], and conspiracy to commit kidnapping[4].  Subsequent thereto, on that same date,

---

[1] 18 PA.CONS.STAT.ANN. § 2502(a).
[2] 18 PA.CONS.STAT.ANN. § 903(a)(1).
[3] 18 PA.CONS.STAT.ANN. § 2901(a)(2).
[4] 18 PA.CONS.STAT.ANN. § 903(a)(1).

J.S18015/09

the trial court sentenced Smart to a term of life imprisonment. Smart filed a direct appeal to this Court from his judgment of sentence, which was affirmed on October 19, 2006. Smart then filed a petition for allowance of appeal with the Supreme Court of Pennsylvania, which was subsequently denied on May 1, 2007.

Thereafter, on October 1, 2007, Smart filed a timely *pro se* PCRA petition. Counsel was appointed to represent Smart after which an amended and supplemental PCRA petition was filed raising issues of alleged ineffectiveness of counsel and racial bias on the part of a juror. As a result, the PCRA court ordered trial counsel to submit signed certifications outlining any contact either had with any member of the jury empanelled for Smart's trial and the extent of that contact to their recollection.

Trial counsel, Ronald Travis, Esquire, by proxy of his legal partner Gary Harris, Esquire, filed said certification with the PCRA court acknowledging post-verdict communication with a juror. Additionally, trial counsel, Eric Lindhardt, Esquire filed said certification indicating that he had no contact with the juror in question following Smart's trial.  Evidentiary hearings were held on Smart's PCRA petition and, on March 18, 2008, the PCRA court issued an order dismissing Smart's PCRA petition. This timely appeal followed.

On appeal, Smart raises the following issues for our review:

- 2 -

     I.      Whether the PCRA Court erred in concluding that, pursuant to Pa.R.E. 606, a juror's testimony was inadmissible to the extent it referenced racially biased statements made by Jury members during the course of deliberations, when said testimony was offered to show appellant had been deprived of his rights as guaranteed by the Sixth Amendment and, alternatively, to show that jurors had been untruthful during voir dire relating to racial bias?

...

     II.     Whether the PCRA Court erred in concluding that trial and appellate counsel were not ineffective for failing to compel forensic testing of evidence in the possession of the Commonwealth, when such testing could have substantially corroborated the defense theory of the case, and the decision not to pursue such testing was never discussed by trial counsel with defendant?

...

     III.     Whether the PCRA Court erred in concluding that trial and appellate counsel were not ineffective for failing to pursue defendant's claim of racial bias based upon information provided by a juror, post-trial, showing other jury members to have falsely answered questions pertaining to racial animus during voir dire?

...

Appellant's Brief, at 2.

Our standard of review of a PCRA court's denial of a petition for post-conviction relief is well-settled: We must examine whether the record supports the PCRA court's determination, and whether the PCRA court's determination is free of legal error. *See **Commonwealth v. Hall**, 867 A.2d 619, 628 (Pa. Super. 2005). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. ***See***

- 3 -

***Commonwealth v. Carr***, 768 A.2d 1164, 1166 (Pa. Super. 2001).   Our

scope of review is limited by the parameters of the PCRA.   ***See***

***Commonwealth v. Heilman***, 867 A.2d 542, 544 (Pa. Super. 2005).

In order to be eligible for PCRA relief, an appellant must prove by a

preponderance of the evidence that his conviction or sentence resulted from

one or more of the enumerated circumstances found in 42 PA.CONS.STAT.ANN.

§ 9543(a)(2). Further, an appellant must demonstrate that the issues raised

in his PCRA petition have not been previously litigated or waived, and that,

"the failure to litigate the issue prior to or during trial or on direct appeal

could not have been the result of any rational strategic or tactical decision

by counsel." ***Commonwealth v. Washington***, 592 Pa. 698, 927 A.2d 586,

593-94 (2007) (citing 42 PA.CONS.STAT.ANN. §§ 9543(a)(3)-(4)).

With this standard in mind, we review Smart's first issue and third

issues on appeal in conjunction with one another as they are related.

Specifically, Smart argues that his due process rights and right to a fair and

impartial jury were violated and both trial and appellate counsel were

ineffective in failing to pursue Smart's claim of racial bias or prejudice based

upon information provided by one of the jurors post-trial. We disagree.

The general rule regarding post-verdict jury testimony is codified in

Pennsylvania Rule of Evidence 606(b) which provides that:

> Upon an inquiry into the validity of a verdict,...a juror may
> not testify as to any matter or statement occurring during

- 4 -

> the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions in reaching a decision upon the verdict or concerning the juror's mental processes in connection therewith, and a juror's affidavit or evidence of any statement by the juror about any of these subjects may not be received. However, a juror may testify concerning whether prejudicial facts not of record, and beyond common knowledge and experience, were improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.

Pa.R.E. 606(b).

"This rule is often referred to as the no impeachment rule." *Commonwealth v. Steele*, _____ Pa. _____, 961 A.2d 786, 808 (2008) (citing *Carter v. U.S. Steel Corp.*, 529 Pa. 409, 604 A.2d 1010,1013 (1992) (plurality)). In *Steele*, our Supreme Court, quoting *Carter*, recognized that, "the strict no impeachment rule provides a narrow exception for post trial testimony of extraneous influences which might have affected [prejudiced] the jury during deliberations." *Id*. (internal quotations omitted). "Under this exception, pursuant to *Carter*, the juror may testify only as to the existence of the outside influence, but not as to the effect this outside influence may have had on deliberations." *Id*. "Under no circumstances may jurors testify regarding their subjective reasoning process." *Id*.

In *Steele*, the appellant sought to introduce racial bias on the part of one of the jurors during deliberations; however, such testimony was barred

pursuant to Pa.R.E. 606(b). Specifically, the Supreme Court in **Steele** found

that "despite [a]ppellant's contentions, the exception to the general no

impeachment rule [was] not implicated" because the exception announced

in **Carter** only applies to *outside* influences, not statements made by the

jurors themselves. **Steele**, 961 A.2d at 808 (emphasis added).

Similarly, in the case *sub judice*, at the PCRA hearing, testimony was

elicited from a juror who contacted defense counsel approximately two

months post-verdict requesting Smart's address. The juror allegedly

corresponded with Smart regarding comments made by another juror during

deliberations in relation to racial bias or prejudice. **See** N.T. PCRA Hearing,

2/26/08 at 39-40. However, under the rationale espoused in **Carter** and

**Steele**, the PCRA court was authorized to permit testimony only as to the

existence of the alleged prejudicial statement, which it did. The PCRA court

permitted the juror to testify that, during deliberations, another juror

expressed his/her viewpoints which may or may not have included elements

of racial bias.

The fact that these influences occurred during jury deliberation renders

the no impeachment rule applicable herein as the statement was made by a

juror themselves and not an outside influence. Thus, the PCRA court

properly barred the post-verdict testimony of the juror in accordance with

Pa.R.E. 606(b) as all the information the juror sought to offer concerned

comments made during the course of jury deliberations. Further, any claim that counsel was ineffective for failing to pursue such a meritless claim is itself without merit. ***See Commonwealth v. Harris***, ____ A.2d ___, ___, 2009 WL 1069793, *8 (Pa. Super., filed April 22, 2009) (counsel cannot be ineffective for failing to raise a meritless claim).

Next, we address Smart's second issue on appeal wherein he argues counsel was ineffective for failing to request and pursue DNA/forensic testing of physical evidence to corroborate the defense theory of the case. To determine whether the PCRA court erred in dismissing Smart's petition on the claims of ineffectiveness of counsel, we turn to the following principles of law:

> In order for Appellant to prevail on a claim of ineffective assistance of counsel, he must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place … Appellant must demonstrate:   (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

***Commonwealth v. Johnson***, 868 A.2d 1278, 1281 (Pa. Super. 2005).

Moreover, "[w]e presume counsel is effective and place upon Appellant the burden of proving otherwise." ***Commonwealth v. Springer***, 961 A.2d 1262, 1267-1268 (Pa. Super. 2008).   "This Court will grant relief only if

- 7 -

Appellant satisfies each of the three prongs necessary to prove counsel

ineffective." ***Commonwealth v. Natividad***, 595 Pa. 188, 208, 938 A.2d

310, 322 (2007).   Thus, we may deny any ineffectiveness claim if "the

evidence fails to meet a single one of these prongs." ***Id.***, 595 Pa. at 207-

208, 938 A.2d at 321.

Here, Smart argues that DNA evidence would have been immeasurably

helpful in his defense and that the decision of trial counsel not to pursue

DNA testing on physical evidence recovered during the course of the

autopsy, namely fingernails, the victim's clothing, and a towel, constitutes

ineffective assistance of counsel. While this claim *may* have some arguable

merit, the second prong of the test enunciated in ***Johnson***, is clearly not

met as trial counsel had a reasonable strategic basis for their inaction.

At the PCRA hearing, trial counsel testified that, the entire defense was

based on reasonable doubt. According to Attorney Lindhart, "there was

substantial reasonable doubt in this case." N.T. PCRA Hearing, 2/26/08 at

14.

> When we cross-examined Trooper Rausher for three
> hours, we were cross-examining him about, I believe,
> nineteen investigative leads that he failed to follow. When
> we cross-examine[d] Troopers about a lack of forensic
> evidence found in Mr. Smart's trunk that would have tied
> the victim to the trunk of that car, that was a reasonable
> doubt issue. When we call[ed] witnesses to testify that
> they had seen Mr. McMann alive in the days and weeks
> following when Mr. Smart was to have killed him, that's
> reasonable doubt. So, if there wasn't any testing done on

J.S18015/09

> a towel or if there wasn't any hair and fiber to tie Mr.
> Smart to the victim, that was a reasonable doubt
> argument that we made.

*Id*.

Based upon the foregoing, it is evident that the defense theory at trial was reasonable doubt: reasonable doubt as to whether Smart committed the offenses charged.  As such, trial counsels' assessment that it would be too risky to seek DNA testing because of the possibility that the testing would confirm the involvement of Smart was a reasonable trial strategy and certainly intended to be in the best interest of Smart's defense. Accordingly, we are in agreement with the PCRA court that, the decision by trial counsel not to request DNA testing was based upon considered trial strategy and as such, counsel was not ineffective, rendering Smart not entitled to PCRA relief on this issue.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Deputy Prothonotary

Date: _____
July 10, 2009

- 9 -

## IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

COMMONWEALTH OF PENNSYLVANIA, : No. 561 MAL 2009
                                                  :

                    Respondent     :

                                                  : Petition for Allowance of Appeal from the
                                                  : Order of the Superior Court

               v.                       :

                                                  :

FABIAN DESMOND SMART,          :

                                     :

                  Petitioner       :

## ORDER

**PER CURIAM**

    **AND NOW**, this 17th day of December, 2009, the Petition for Allowance of Appeal is **DENIED**.

TRUE AND CORRECT COPY
Attest: December 17, 2009

*Elizabeth Zisk*

Elizabeth E. Zisk, Chief Clerk