

IN THE SUPREME COURT OF PENNSYLVANIA
HARRISBURG DISTRICT

SUPERIOR COURT DOCKET NO. 588 MDA 2005

## COMMONWEALTH OF PENNSYLVANIA V. FABIAN D. SMART

### PETITION FOR ALLOWANCE OF APPEAL

---

Appeal from Judgment of the Superior Court filed October 19, 2006, at Docket No. 588
MDA 2005, affirming the final order entered in the Court of Common Pleas, Clinton
County, Pennsylvania, on October 21, 2004, at No. 175-02

---

Eric R. Linhardt, Esquire
Attorney for Appellant, Fabian D. Smart
25 West Third Street
Suite 803
Williamsport, Pa 17701
Telephone (570) 320-7788
Attorney Id. 59981


Ronald C. Travis, Esquire
Attorney for Appellant, Fabian D. Smart
Rieders, Travis, Humphrey, Harris, Waters & Waffenschmidt
161 West Third Street
Williamsport, Pa 17701
Telephone (570) 323-8711
Attorney Id. 08819

TABLE OF CONTENTS

                                                           PAGES

TABLE OF CITATIONS                                          iii

OPINIONS DELIVERED BELOW                                    1

ORDER IN QUESTION                                           2

STATEMENT OF QUESTIONS INVOLVED                             3

STATEMENT OF CASE                                          4

STATEMENT OF REASONS RELIED UPON                           7

    Order denying Appellant's Post-Sentence Motions
    without hearing dated March 2005

    1925(A) Opinion of the Trial Court of March 2006

    Order and Opinion of the Superior Court dated
    October 19, 2006

REPRODUCED RECORD (Both volumes separate from Petition)

    VOLUME I

    Sentencing Order of October 21, 2004                001a

    Sentencing Order of January 24, 2005               004a

    Post-Sentence Motion                               008a

    Order granting extension of time to issue a decision
    on Post-Sentence Motion                            028a

    Order denying Post-Sentence Motion without hearing   029a

    Notice of Appeal                                   030a

    Order declaring Clinton County's jury pool
    unconstitutional dated November 24, 2003           062a

Order denying Appellant's second motion to declare
Clinton County's jury pool unconstitutional dated
September 7, 2004                                                    063a

Jury Qualification Forms                                            064a

Jury List                                                          152a

Relevant portion of trial transcript of September 29, 2004    172a

Relevant portion of trial transcript of September 30, 2004    175a

Relevant portion of trial transcript of October 4, 2004, a.m. 183a

Relevant portion of trial transcript of October 4, 2004, p.m. 186a

Relevant portion of trial transcript of October 5, 2004      189a

Relevant portion of trial transcript of October 6, 2004      191a

Relevant portion of trial transcript of October 8, 2004, a.m. 195a

Relevant portion of trial transcript of October 8, 2004, p.m. 201a

Relevant portion of trial transcript of October 11, 2004     204a

VOLUME II

Media reports and news articles                             211a

PROOF OF SERVICE

<u>TABLE OF CITATIONS</u>

**Cases**                                                          **Pages**

*Commonwealth v. Sullivan*, 820 A.2d 795, 806 (Pa.Super 2003)...................11

**Statutes**                                                       **Pages**

42 Pa.C.S. §4521(a).....................................................................8, 9, 10

42 Pa.C.S. §4521(d)....................................................................8, 10

42 Pa.C.S. §4524.......................................................................8, 10

## OPINIONS DELIVERED IN THE COURTS BELOW

By Opinion filed on the 14th day of March, 2006, the Honorable Richard N. Saxton, Jr., President Judge of the Court of Common Pleas of Clinton County, affirmed its Order of March 15, 2005 denying Defendant's Post-Sentence Motion. Following an appeal to the Superior Court, the Superior Court by Opinion filed October 19, 2006, affirmed the Order of the trial court denying Mr. Smart's claims for relief. Copies of the Opinion of the trial court and the Superior Court are appended hereto.

ORDER IN QUESTION

This Petition for Allowance of Appeal is taken from the trial court's Order filed on March 15, 2005, in the Court of Common Pleas of Clinton County at No. 175-02, denying Mr. Smart's Post-Sentence Motion, and the Superior Court Order filed October 19, 2006, affirming the Order of the trial court. Copies of both Courts' Orders are attached hereto.

## STATEMENT OF QUESTIONS INVOLVED

I.  DID THE INSTANCES OF PROSECUTION MISCONDUCT WHEN TAKEN TOGETHER SO TAINT THE FAIRNESS OF THE TRIAL THAT APPELLANT SHOULD BE GRANTED A NEW TRIAL IN THE INTEREST OF JUSTICE?

--Answered in the affirmative

II.  DID THE TRIAL COURT ERR IN DENYING APPELLANT'S MOTION TO DECLARE CLINTON COUNTY'S JURY POOL IN VIOLATION OF 42 PA.C.S.A. §4521(a), 4521(d), 4524 AND THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION?

--Answered in the affirmative

III.  DID THE TRIAL COURT ERR IN DENYING APPELLANT'S MOTION FOR CHANGE OF VENUE OR VENIRE?

--Answered in the affirmative

IV.  WAS THE VERDICT AGAINST THE WEIGHT OF THE EVIDENCE?

--Answered in the affirmative

V.  DID TRYING THE APPELLANT BEFORE A DEATH QUALIFIED JURY DURING THE MERITS PHASE OF THE TRIAL DEPRIVE THE APPELLANT OF A TRIAL BEFORE A CROSS-SECTION OF THE COMMUNITY?

--Answered in the affirmative

3

## STATEMENT OF THE CASE

Appellant Fabian Smart was charged with First Degree Murder, Kidnapping and Conspiracy. Said charges arise out of an allegation that on January 22, 1999, Fabian Smart and his co-conspirators beat Jason McMann unconscious, placed him in the trunk of Fabian Smart's car and drove him to a rural area of Clinton County, where his body was discovered approximately three months later on April 8, 1999.

Because the Commonwealth sought the death penalty, attorneys Ronald Travis and Eric Linhardt were appointed by the court to represent Fabian Smart at his trial and in this appeal. In the course of preparing for trial, Appellant's counsel filed numerous pretrial motions, nearly all of which, except for a motion to suppress evidence, were denied without hearing.

Ultimately, trial commenced with jury selection on September 13, 2004. After several weeks of jury selection and trial, the Appellant was ultimately found guilty of all charges. However, the jury deadlocked on the question of death, and consequently, on October 21, 2004, the court sentenced Appellant Smart on the charge of Murder in the First Degree to life in prison. Subsequently, on January 24, 2005, Appellant Smart was sentenced on the remaining counts of Conspiracy to Commit Kidnapping, Kidnapping and Conspiracy to Commit Murder. On November 1, 2004, Appellant filed a Post-sentence Motion. The court, on Motion of the Appellant, granted itself a thirty (30) day extension of time to rule on Appellant's Post-sentence Motions. By Order dated March

15, 2005, Appellant's Post-sentence motions were denied. No opinion was filed in support of this Order.

Appellant filed a Notice of Appeal to the Superior Court on April 7, 2005. Appellant's brief was due to be filed on or before August 31, 2005. However, Counsel had requested, but at that point not received, the complete transcripts from Appellant's trial, including the mitigation portion of the trial. These transcripts would include the notes of testimony of October 11, 2004 through the pronouncement of sentence by the Honorable Richard Saxton. Because counsel required complete transcripts to file a meaningful 1925(B) Statement of Matters Complained of on Appeal, by Order dated April 21, 2005, the Honorable Richard Saxton granted counsel an extension of time to file the Statement of Matters Complained of on Appeal until fourteen (14) days after the filing of all transcripts. As a result, Defense Counsel requested and received an extension of time to file his brief with this Court. Appellant's brief was now due to be filed no later than September 30, 2005. However, as this briefing deadline approached, counsel continued to await the preparation of trial transcripts and, consequently, had not filed a Statement of Matters Complained of on Appeal and the court had not issued a 1925(A) Opinion.

A second extension of time was requested and granted. Appellant's brief was now due no later than December 21, 2005. Unfortunately, counsel continued to await the preparation of complete trial transcripts. However, so as not to delay Appellant Smart's appeal any further, Appellant's counsel filed contemporaneous with his brief, his

Statement of Matters Complained of on Appeal, as well as a Motion with the lower court requesting that the court compel the immediate production of trial transcripts. The lower court issued that Order and trial transcripts were subsequently prepared. The Court issued it's 1925(A) Opinion on March 14, 2006.

By Opinion filed October 19, 2006, the Superior Court affirmed the decision of the trial court. This timely Petition for Allowance of Appeal follows.

## STATEMENT OF REASONS RELIED UPON

First, the pervasive misconduct engaged in by the prosecution denied Smart due process of law under both the federal and state constitutions. Further, the accumulated taint occasioned by each individual act of prosecution misconduct served to deprive Smart of his constitutional entitlement to a fair trial under both the federal and state constitutions. No fair-minded person can review the transcript in this case and avoid the conclusion that the chance for Fabian Smart to have the question of his innocence or guilt fairly deliberated by the jury was significantly negatively impacted by the repeated, unrelenting misconduct engaged in by counsel for the Commonwealth. The inescapable conclusion is that counsel for the Commonwealth tried the case in a manner demonstrating an attitude of the end justifying the means, and win at all costs. This approach is totally inconsistent with the appropriate approach for a prosecutor to take in a criminal case, and in violation of Smart's federal and state constitutional rights.

As a review of the trial transcript clearly shows, day after day, witness after witness, the attorney for the Commonwealth engaged in improper questioning of witnesses suggesting the existence of certain "facts," when there was no record to support the unwarranted assertions. When challenged by objection, the attorney for the Commonwealth did not attempt to offer a legitimate legal basis which would permit the question to be asked, and did not offer a "good faith basis" for asking the objected to questions. The continual practice of the attorney for the Commonwealth was to announce the question was being "withdrawn" as the objection was being sustained. This pervasive

practice of making unprovable factual assertions in front of the jury would leave behind the misleading, unprovable and willfully false innuendo for the jury to grasp. It is only when one reviews the trial transcript and observes the continued conduct of the attorney for the Commonwealth that one is able to grasp the significant, egregious misconduct on the part of the attorney for the Commonwealth.

Second, Appellant contends that Clinton County's jury pool was in violation of 42 Pa.C.S. §4521(a), §4521(d), §4524 and the Sixth Amendment to the United States Constitution. Title 42 Pa.C.S. §4521(a) is the statutory section governing the selection of jury pools in Pennsylvania state courts. Section 4521(a) states that, in preparing a master list of prospective jurors, "the list shall contain all voter registration lists of the County, which list may be incorporated by reference, or names from such other lists which in the opinion of the Commission will provide a number of prospective jurors which is equal to or greater than the number of names contained in the voter registration list."

On or about November 6, 2003, Appellant Smart filed a Motion to Declare Clinton County's Jury Pool in Violation of 42 Pa.C.S.A. §4521(a) and the Sixth Amendment of the United States Constitution. At that time, Clinton County selected its pool of potential jurors from the occupational tax rolls only. These names then comprised the pool from which one hundred and thirty-two (132) names were pulled every two months for jury selection. The names are put into a wheel and were drawn from the wheel.

In 2003, the number of prospective jurors in Clinton County's occupational tax roll was not greater than the number of names contained in the voter registration list and

8

Clinton County's jury pool was, therefore, in violation of Title 42 Pa.C.S. §4521(a).

Specifically, the voter registration rolls in Clinton County at that time listed 21,750

individuals. The occupational tax rolls of Clinton County, as of October 8, 2003, listed

20,998.

Limiting the selection of potential jurors to the names contained on the occupation

tax rolls also violated Appellant Smart's Sixth Amendment right to an impartial jury trial

because it left him with a jury panel that did not represent a fair cross-section of the

community at large.

On November 24, 2003, the trial court issued an Order granting Appellant Smart's

Motion, and declared Clinton County's Jury Pool in violation of 42 Pa.C.S.A. §4521(a)

and the Sixth Amendment to the United States Constitution. That Order stated, inter alia,

"The Jury Commissioners are revising the jury pool to include voter registration lists as

well as any other lists deemed appropriate in accordance with §4521".

Consistent with that Order, Appellant Smart believed that the Jury Commission

would revise the jury pool, discard the jury pool found by the trial court to be in violation

of 42 Pa.C.S.A. §4521(a) and the Sixth Amendment to the United States Constitution,

and select a new jury pool for 2004, using voter registration lists and other lists in

accordance with section 4521, and the United States Constitution. However, this did not

occur. Consequently, therefore, Appellant Smart filed on August 27, 2004, a Second

Motion to Declare Clinton County's Jury Pool in Violation of 42 Pa.C.S.A. §4521(a) and

the Sixth Amendment of the United States Constitution. On September 7, 2004, without

hearing, Appellant Smart's Second Motion was summarily denied in a Court Order

containing only three words: "Motion Frivolous. Denied."

Appellant Smart filed a Motion for Reconsideration from the trial court's September 7,

2004 Order. Appellant Smart's Motion for Reconsideration was also denied without

hearing. Appellant Smart avers that his Second Motion to Declare Clinton County's Jury

Pool in Violation of 42 Pa.C.S.A. §4521(a) and the Sixth Amendment of the United

States Constitution clearly set forth sufficient facts to establish that the September 2004

jury pool from which Appellant Smart's jurors were selected continued to be in violation

of §4521(a), §4521(d), §4524 and the Sixth Amendment to the United States

Constitution. At the very least, Appellant Smart contends that he was entitled to an

evidentiary hearing to establish a record and to prove the facts as set forth in his Motion,

which, if accepted by the trial court, would have entitled him to relief.

    Third, Appellant Smart contends the trial court erred in denying his Motion for

Change of Venue or Venire. Due to the centralized location and rural nature of Clinton

County, local media coverage and dissemination comes from a variety of media sources.

However, a primary source of local news to the community is the Lock Haven Express

newspaper which Appellant Smart believes has a circulation in excess of ten thousand

(10,000) customers. According to the U.S. Bureau of Census, Clinton County has only

14,773 households and a total population over the age of 18 of just 29,610 persons.

    From the time of Mr. McMann's reported disappearance until the arrest of

Appellant Smart, and continuing through the time of the filing of Appellant's Motion For

10

Change of Venue, no less than thirty five newspaper articles had appeared in the Lock Haven Express alone. *America's Most Wanted* television program aired three (3) stories regarding the McMann investigation and the arrest of Appellant Smart. The Williamsport Sun Gazette, with circulation in Clinton County, as well as radio and television broadcasts had also saturated the County with stories about McMann's disappearance and Appellant Smart's arrest. Furthermore, during this period of time, the family of Jason McMann had pasted placards throughout the community, offered rewards, held vigils of support, enlisted local friends, prodded police, and encouraged media outlets to print stories.

Appellant Smart avers that a change of venue or venire became necessary because a fair and impartial jury could not be selected in Clinton County. During jury selection, it became clear that very few of the prospective jurors had not read or had not heard news reports and had not formed an opinion regarding the guilt or innocence or Fabian Smart.

The media coverage had been sensational and inflammatory, and slanted toward conviction. It had referred to alleged confessions, admissions and reenactments of the crime by the accused. Its sources had derived from police and prosecuting officer reports. Furthermore, the publicity had been so extensive, sustained and pervasive that the small community of Clinton County must be deemed to have been saturated with it. Because the extensive media coverage continued through the time of jury selection, there had not been sufficient time for this prejudice to have dissipated.

Fourth, Appellant contends the verdict was against the weight of the evidence. "[A] new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Commonwealth v. Sullivan*, 820 A.2d 795, 806 (Pa.Super 2003). In the instant matter, after five years of investigation, nearly five hundred (500) interviews, weeks of trial, numerous witnesses, and close to ninety (90) exhibits, ultimately, the Commonwealth's case came down to the testimony of four witnesses; Jamie Allen, Jermaine Ballard, Quincy Teel, and Willie Williams. However, the testimony of these four individuals, and the Commonwealth's theory of the case could not be reconciled with the overwhelming evidence and testimony from lay and expert witnesses. Consequently, no reasonable jury could have accepted the testimony of these four Commonwealth witnesses and concluded that Fabian Smart was guilty beyond a reasonable doubt.

Lastly, Appellant Smart requested that the court empanel a jury, which was neither life nor death qualified, to hear and decide the first phase of the trial. This request was denied. Various studies have established that death qualified jurors are biased in favor of conviction. As a result, the exclusion of potential jurors, based on death penalty attitudes, served to deprive Fabian Smart of his state and federal constitutional right to be tried by jurors drawn from a fair cross-section of the Clinton County community. In holding that the same jury would hear the merits phase and also the penalty phase, if a first-degree conviction was returned, the court effectively eliminated from jury service

12

Clinton County citizens whose death penalty views would disqualify them from participating in the penalty phase of a capital trial. As was the case with virtually all of the pre-trial motions which were filed, the court summarily denied the motion without an evidentiary hearing, and thus prevented the defense from creating a record concerning the fact that death qualified jurors are biased in favor of conviction.

For all of the above reasons, Appellant Smart respectfully requests that his Petition for Allowance of Appeal be granted, that ultimately his appeal be sustained, that his conviction be vacated, and that he be granted a new trial.

Respectfully Submitted,

Eric R. Linhardt, Esquire
Attorney for Appellant, Fabian D. Smart
Pennsylvania Attorney Id. No. 59981
25 West Third Street, Suite 803
Williamsport, Pa 17701
Telephone (570) 320-7788

Ronald C. Travis, Esquire
Attorney for Appellant, Fabian D. Smart
Pennsylvania Attorney Id. No. 08819
Rieders, Travis, Humphrey, Harris, Waters
& Waffenschmidt
161 West Third Street
Williamsport, Pa 17701
Telephone (570) 323-8711

## COURT OF COMMON PLEAS OF CLINTON COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | ) | NO. 175-02 |
| | ) | CRIMINAL |
| v. | ) | |
| | ) | |
| FABIAN D. SMART, | ) | |
| Defendant | ) | |

FILED CLINTON COUNTY, PA
2005 MAR 15 A 9: 27
SHERRY L. YARRISON
PROTHONOTARY & CLERK

### ORDER
RE: DEFENDANT'S POST-SENTENCE MOTIONS

March 15, 2004

IT IS HEREBY ORDERED that the Defendant's Post-Sentence Motions are

DENIED without a hearing.

BY THE COURT:

Richard N. Saxton, Jr.                    P.J.

cc:   Ted McKnight, District Attorney
      Joseph McGettigan, Special Prosecutor
      Eric R. Linhardt, Esquire, 25 West Third Street, Suite 803, Williamsport, PA 17701
      Ronald C. Travis, Esquire, 161 West Third Street, P.O. Box 215, Williamsport, PA
      17701
      File

RICHARD N. SAXTON, JR.
PRESIDENT JUDGE

COURT OF COMMON PLEAS
25TH JUDICIAL DISTRICT
OF PENNSYLVANIA
COURT HOUSE
LOCK HAVEN, PA 17745

CERTIFIED FROM THE CRIMINAL RECORDS
OF THE COURT OF COMMON PLEAS AT
LOCK HAVEN, PA THIS _____ DAY
OF _____, _____
_____
SHERRY L. YARRISON, Clerk of Courts
Clinton County, PENNSYLVANIA

## COURT OF COMMON PLEAS OF CLINTON COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA )   NO. 175-02
                                           )   CRIMINAL
        v.                              )
                                           )
FABIAN D. SMART                     )
                                           )

### STATEMENT PURSUANT TO RULE 1925(a) OF THE
### PENNSYLVANIA RULES OF APPELLATE PROCEDURE

March 13, 2006

On October 14, 2004, a jury found the Defendant guilty of murder of the first degree, criminal conspiracy to commit murder of the first degree, kidnapping, and criminal conspiracy to commit kidnapping. After hearing testimony during the penalty phase, the jury deliberated but could not reach a consensus as to whether the Defendant should be sentenced to life imprisonment or death. Accordingly, on October 21, 2004, the Court sentenced the Defendant to life imprisonment. The Defendant filed post-sentence motions on November 15, 2004, which were denied on March 15, 2005, without a hearing. The Defendant filed a timely Notice of Appeal on April 7, 2005. The Court extended the time for the Defendant to file his 1925(b) Statement of Matters Complained of on Appeal until fourteen days after the filing of all the trial transcripts. He filed his Statement of Matters Complained of on appeal on December 21, 2005.

In his Statement of Matters Complained of on Appeal, the Defendant asserts that:

(1) the instances of prosecutorial misconduct, when taken together, so tainted the fairness of ... should be granted a new trial; (2) the trial court erred in denying his motion

1

to declare Clinton County's jury pool in violation of 42 Pa.C.S.A. §4521(a), 4521(d), 4524

and the Sixth Amendment to the United States Constitution; (3) the trial court erred in

denying his motion for change of venue or venire; (4) the verdict was against the weight of

the evidence; and (5) the trial court erred by trying the Defendant before a death qualified

jury during the merits phase of the trial which deprived him of a trial before a cross-section

of the community. The Court will discuss each of these assertions in turn.

## I. ALLEGATIONS OF PROSECUTORIAL MISCONDUCT

First, the Defendant claims that the instances of prosecutorial misconduct so tainted

the fairness of the trial that he should be granted a new trial.   He raises twenty-one instances

of alleged prosecutorial misconduct.  Although he concedes that none of the individually

identified acts standing alone would warrant a new trial, the Defendant claims that the

"accumulated taint occasioned by each of these individual acts serve to deprive him of a fair

trial."   The Supreme Court of Pennsylvania rejected the "accumulated taint" argument in

*Commonwealth v. Freeman,* 827 A.2d 385, 416 (Pa. 2003) stating that "no number of failed

claims may collectively attain merit if they could not do so individually."

Nevertheless, the Court has reviewed each of the twenty-one allegations of

prosecutorial misconduct and will discuss each one in turn.   Before doing so, however, the

Court notes it is only when the prosecuting attorney intentionally subverts the court process

by making comments that prejudice the jury, causing them to harbor a fixed bias and

hostility toward the defendant so that they would be unable to objectively weigh the

evidence and render a true verdict, that a new trial is appropriate. *Commonwealth v. Ragan,*

743 A.2d 390, 403 (Pa. 2000).

CHARD N. SAXTON, JR.
PRESIDENT JUDGE
COURT OF COMMON PLEAS
25TH JUDICIAL DISTRICT
OF PENNSYLVANIA
COURT HOUSE
LOCK HAVEN, PA 17745

The Defendant's first allegation of prosecutorial misconduct concerns the testimony of the Commonwealth's witness, Sergeant Steve Fultz of the Pennsylvania State Police. On cross-examination, Sergeant Fultz testified there were no tire impressions matching the Defendant's car found in the area where the victim's body was found in April 1999. (N.T. 9/29/2004, A.M., p. 89) On redirect, the prosecuting attorney asked Sergeant Fultz if he would expect tire tracks from the Defendant's car to remain there from January to April. (N.T. 9/29/2004, A.M., p. 91) Defense counsel objected on the grounds that the question was leading and that it assumed facts not in evidence.

In its opening instructions, the Court informed the jury that

> Statements made by the attorneys do not constitute evidence. The questions which counsel put to witnesses are not themselves evidence. Let me repeat that again. The questions which the attorneys put to witnesses are not themselves evidence. It is the witnesses' answers that provide the evidence for you. You should not speculate or guess that a fact may be true merely because one of the lawyers asks a question which assumes or suggests that a fact is true.

Furthermore, the Supreme Court of Pennsylvania stated in *Commonwealth v. Chambers,* 599 A.2d 630, 640 (Pa. 1991) that "the rule that a party calling a witness is not permitted to ask leading questions ... is [to be] liberally construed in modern practice, with a large measure of discretion in the court to permit parties to elicit any material truth without regard to the technical considerations of who called the witness." In the Court's opinion, the attorney for the Commonwealth was merely attempting to elicit a material truth when he asked the witness whether he would expect tire tracks to remain from January to April.

Defendant's second allegation concerns the testimony of Jamie Allen, who testified on direct that the Defendant told him that he, the Defendant, had killed the victim and how he, the Defendant, killed the victim. Defense counsel cross-examined Allen extensively,

CHARD N. SAXTON, JR.
PRESIDENT JUDGE

COURT OF COMMON PLEAS
25TH JUDICIAL DISTRICT
OF PENNSYLVANIA
COURT HOUSE
LOCK HAVEN, PA 17745

and he admitted that he had lied to the police several times because, at that point, he believed it was in his best interest to lie. (N.T. 9/30/04, A.M., p. 59) On redirect, the prosecuting attorney questioned Allen about this particular statement and asked Allen, "Would not getting killed, that would be in your best interest, too, wouldn't it?" Defense counsel objected to the form of the question. The Court sustained the objection and told the jury to ignore the question after which the prosecuting attorney withdrew the question. Since the witness did not answer the question, the Defendant was not prejudiced by the admission of any improper evidence.

In the Defendant's third allegation of prosecutorial misconduct, he asserts that the prosecuting attorney deliberately disobeyed the Court's ruling concerning a statement made by Nicole Killinger to Detective Charles Shoemaker. (N.T. 9/30/2004, A.M., p. 88-93). The Court informed the prosecuting attorney that he could not ask Detective Shoemaker about the **content** of a statement given by Nicole Killinger. The prosecuting attorney then asked Detective Shoemaker, "And had you been advised at some point during the course of the investigation that Jamie Allen had told Nicole Killinger what Fabian Smart said about the murder of Jason McMann?" The purpose of the question was not to elicit the content of the statement but rather only that she had made such a statement and when she had made the statement.[1] The asking of the question does not constitute prosecutorial misconduct.

Defendant's fourth allegation of prosecutorial misconduct concerns the testimony of Pennsylvania State Trooper David Rausher. Defense counsel cross-examined Trooper Rausher extensively about all of the tips he did not follow up in his investigation, the tests

CHARD N. SAXTON, JR.
PRESIDENT JUDGE
COURT OF COMMON PLEAS
25TH JUDICIAL DISTRICT
OF PENNSYLVANIA
COURT HOUSE
LOCK HAVEN, PA 17745

[1] Later that day, the prosecuting attorney and defense counsel stipulated that Nichole Killinger made an audio-taped statement and stipulated as to the content of the transcription, the pertinent parts of which were read into the record by agreement of counsel.

he did not order to be performed, and the witnesses he did not interview. On redirect, the prosecuting attorney said to Trooper Rausher, "Gee, I thought you did a pretty good investigation." (N.T. 10/4/04, P.M., p. 142-143) Defense counsel objected and the Court sustained the objection and told the jury to disregard the question. Again, the jury was informed several times that the questions attorneys ask are not evidence. Furthermore, Trooper Rausher did not answer the question, so no improper evidence was admitted.

The Defendant's fifth allegation of prosecutorial misconduct concerns a question the prosecuting attorney asked of Dr. Wayne Ross, the Commonwealth's forensic pathologist, on redirect. The prosecuting attorney asked Dr. Ross if he was aware that Dr. Samuel Land, who had been the Commonwealth's forensic pathologist initially, had been a forensic pathologist for one year at the time he conducted his examination. (N.T. 10/5/2004, A.M., p. 81) The Defendant objected to the Commonwealth attorney's suggestion that Dr. Land was inexperienced and the Court instructed the jury to ignore the statement. The Commonwealth attorney stated that he would support the statement with testimony later; however, the next day he discovered he was wrong. The Court informed the jury as follows:

> Ladies and gentlemen, before we begin, I want to – following some discussion, I want to point out to you that yesterday Mr. McGettigan had asked Dr. Wayne Ross if he, Dr. Ross, was aware that at the time Dr. Land conducted his examination of the body, that Dr. Land had been a forensic pathologist for about one year. Now Mr. McGettigan had been advised that that was the case. However, he discovered this morning that he was wrong, and in fact, Dr. Land had been and has been a full-time practicing forensic pathologist since 1993. And I just wanted you folks to know that. (N.T. 10/06/2004, A.M., p. 3)

ICHARD N. SAXTON, JR.
PRESIDENT JUDGE
COURT OF COMMON PLEAS
25TH JUDICIAL DISTRICT
OF PENNSYLVANIA
COURT HOUSE
LOCK HAVEN, PA 17745

5

In the Court's opinion, the jury was adequately informed about the error, and the only person who might have been prejudiced by the incident was the prosecuting attorney, not the Defendant.

Defendant's sixth allegation of prosecutorial misconduct concerns the testimony of defense witness, Duwaine Duck. Mr. Duck testified that he was plowing snow on Lily Pond Road on February 4 and February 6, 1999. On one of those days, he noticed tire tracks in the snow and the footprints of three individuals. It appeared to him that the car had become stuck in the snow and that the people inside had gotten out of the vehicle. The tracks then showed the vehicle had turned around and left Lily Pond Road. (N.T. 10/06/2004, A.M., p. 35) After McMann's body was found in April, Mr. Duck thought his observations might have some significance, so he informed the police. On cross-examination, the prosecuting attorney asked the witness, "Okay. Somebody got lost. Went up Lily Pond, didn't know where they were, turned around, drove out." The witness answered, "I believe." Defense counsel objected to the form of the question and the Court sustained the objection. (N.T. 10/06/2004, A.M., p. 42-43) The Commonwealth's attorney was asking if his statement was a plausible explanation for the tracks. The question does not constitute prosecutorial misconduct.

The Defendant's seventh allegation of prosecutorial misconduct concerns the same witness, Duwaine Duck. Mr. Duck confirmed, on cross-examination, that he used to be a hunter. The prosecuting attorney asked him, "And there would probably be enough snow, well, in your hunting experience, somebody's laying down flat down there at the bottom and snow covering that body, you couldn't even see it." (N.T. 10/06/2004, A.M., p. 43) Defense counsel objected after which the prosecuting attorney withdrew the question. The

RICHARD N. SAXTON, JR.
PRESIDENT JUDGE

COURT OF COMMON PLEAS
25TH JUDICIAL DISTRICT
OF PENNSYLVANIA
COURT HOUSE
LOCK HAVEN, PA 17745

6

Court instructed the jury to ignore the question. The witness did not answer, so the Defendant was not prejudiced by the admission of any improper evidence.

Defendant's eighth allegation concerns the cross-examination of Kristin Hull. The prosecuting attorney asked her about a picture that had been taken five years prior to trial. She testified that she never thought about the picture until the private investigator hired by defense counsel discussed it with her. She said that as soon as she saw the picture, she remembered that day exactly. When the prosecuting attorney asked her another question, which she could not answer, he asked her, "If you spoke with the private investigator, would that help you?" (N.T. 10/6/2004, A.M., p. 78 – 80) Counsel for the Defendant objected to the question, the Court sustained the objection, and the prosecuting attorney apologized. While the question may have been sarcastic, it is not the sort of statement that would prejudice the jury and cause them to be biased or hostile to the Defendant. In addition, the witness did not answer, so no improper evidence was admitted.

The Defendant's ninth allegation of prosecutorial misconduct concerns a question asked by the prosecutor, on cross-examination, to Donald Walker, Clinton County Coroner. The prosecuting attorney elicited from Mr. Walker that the District Attorney had suggested Dr. Wayne Ross for the postmortem examination of the victim. He asked Mr. Walker if the District Attorney had suggested Dr. Ross because "he just was completing or had completed a kind of a complex baby murder investigation in which Dr. Ross had been the medical examiner?" (N.T. 10/07/2004, A.M., p. 24) Defense counsel objected to the form of the question after which the Court sustained the objection. The prosecuting attorney withdrew the question. The Court emphasized throughout the trial that attorney's questions were not evidence, that only the answers were evidence. The witness did not respond to this question.

ICHARD N. SAXTON, JR.
PRESIDENT JUDGE
COURT OF COMMON PLEAS
25TH JUDICIAL DISTRICT
OF PENNSYLVANIA
COURT HOUSE
LOCK HAVEN, PA 17745

In any event, it is difficult to comprehend how the asking of this question could cause the jury to be biased or hostile toward the Defendant.

In Defendant's tenth allegation, he objects to the question asked by the prosecuting attorney to Neal Haskell, the defense forensic entomology expert. Dr. Haskell agreed with the prosecuting attorney that as a scientist, it is important to gather as much data as possible about the event in question. (N.T. 10/08/2004, A.M., p. 42) The prosecuting attorney then asked Mr. Haskell if he had ever asked for the statements of Willie Williams, Jamie Allen, Quincy Teel, or Jermaine Ballard, or talk to the Defendant. Defense counsel objected and requested a mistrial. The prosecuting attorney argued that the questioning was relevant because if Mr. Haskell testified that it is important to gather as much data as possible, yet he did not review the statements of the co-conspirators or talk to the Defendant, then he did not have all the data available concerning the event inferring that his conclusions would lack validity. (N.T. 10/08/2004, A.M., p. 46 – 50) The Court denied the motion for a mistrial but instructed the prosecuting attorney to conclude this line of questioning. In the Court's opening and closing instructions, it informed the jury that the Defendant did not have to take the witness stand or offer any witnesses on his behalf. The Defendant was not prejudiced by the above incident.

Defendant's eleventh allegation of prosecutorial misconduct concerns the testimony of the same witness, Neal Haskell. On cross-examination, Mr. Haskell testified that he was a member of several professional organizations. The prosecuting attorney asked him whether there had been efforts to remove the witness from any of those organizations. (N.T. 10/8/2004, A.M., p. 66 – 67) The witness responded that there had been no such efforts.

RICHARD N. SAXTON, JR.
PRESIDENT JUDGE

COURT OF COMMON PLEAS
25TH JUDICIAL DISTRICT
OF PENNSYLVANIA
COURT HOUSE
LOCK HAVEN, PA 17745

Defense counsel did not object to this question at trial. Therefore, this issue is waived. *Commonwealth v. Duffy*, 832 A.2d 1132, 1136 (Pa. Super. 2003).

Defendant's twelfth allegation concerns the testimony of Dr. Theodore Siek, the defense toxicology expert. On direct examination, Dr. Siek testified that he disagreed with Dr. Wayne Ross's conclusion that gamma-hydroxybutyric acid (GHB) levels occur naturally in a body after death.[2] (N.T. 10/08/2004, P.M., p. 19) He further testified that there was a "reasonable possibility" that McMann ingested GHB before he died, but that he could not say within a reasonable degree of scientific certainty. (N.T. 10/08/2004, P.M., p. 51-52) On cross-examination, the prosecuting attorney asked him if he was in any position to argue with the conclusion of Dr. Ross that the cause of death was the result of blunt trauma? Defense counsel objected to the question and the Court sustained the objection. The Court informed the jury throughout the trial that questions of counsel are not evidence, that only the answers are evidence. Because the witness did not answer the question, no improper evidence was admitted.

Defendant's thirteenth allegation concerns a question asked by the prosecuting attorney to defense witness Angela Weber. Ms. Weber testified that she had known the Defendant for a couple years and that he had been her next-door neighbor. The prosecuting attorney asked, "Which one of your friends dated him?" (N.T. 10/8/2004, P.M., p. 90) Because defense counsel did not object to this question at trial, it is also waived.

Defendant's fourteenth allegation of prosecutorial misconduct concerns a statement made by the prosecuting attorney to defense witness, Gary Rini, a forensic science

ARD N. SAXTON, JR.
PRESIDENT JUDGE

JRT OF COMMON PLEAS
TH JUDICIAL DISTRICT
OF PENNSYLVANIA
COURT HOUSE
ICK HAVEN, PA 17745

---

[2] The Defendant's theory was that Dr. Samuel Land, the Commonwealth's original forensic pathologist, was correct when he opined that McMann died from a GHB overdose combined with hypothermia. However, Dr. Land testified at trial that he was wrong and that, in light of the literature, no reasonable forensic pathologist could conclude GHB was the cause of death. (N.T. 10/08/2004, P.M., p. 5)

consultant. The prosecuting attorney asked, "Okay. How many murders have you served as the lead investigator on? I'm up around a hundred. Where are you at?" (N.T. 10/11/2004, A.M., p. 59) The Defendant claims that the prosecuting attorney was attempting to elevate his status in the eyes of the jury. While there may have been a certain amount of arrogance in the prosecuting attorney's statement, the Defendant did not object to it at trial. Therefore, he has waived this issue.

Defendant's fifteenth allegation of prosecutorial misconduct concerns the cross-examination of Gary Rini, forensic science consultant. The prosecuting attorney referred to a soil sample as being "identical" to the one found in the Defendant's car instead of "similar in color and texture and characteristics," which was the exact wording in the lab report. Defense counsel objected, but the prosecuting attorney corrected himself before the Court could rule on the objection. (N.T. 10/11/2004, A.M., p. 68) Eventually, the prosecuting attorney and defense counsel reached a stipulation concerning the soil, which the Court read to the jury.

> All right. And there's another stipulation that I wish to read to you. During the testimony of Mr. Rini, it was inadvertently stated that the dirt found in the Defendant's trunk was identical to the dirt found on – the dirt at Lily Pond Road. And Counsel have agreed that you be informed that the fact of the matter is that the dirt found in the car is common dirt and can be found in many places. (N.T. 10/12/2004, A.M., p. 12-13)

In the Court's opinion, the error was corrected, the jury was informed, and the Defendant was not prejudiced by the prosecutor's misstatement.

The Defendant's sixteenth, seventeenth, eighteenth, and nineteenth allegations concern the testimony of Christine Cecconi (formerly Christine Hostrander). Allegation

RICHARD N. SAXTON, JR.
PRESIDENT JUDGE
COURT OF COMMON PLEAS
25TH JUDICIAL DISTRICT
OF PENNSYLVANIA
COURT HOUSE
LOCK HAVEN, PA 17745

sixteen concerns a question asked by the Commonwealth's attorney on cross-examination,

Ms. Cecconi had testified on direct examination that she used to date Jason McMann in high

school and had considered resuming the relationship. She testified that Jason McMann

came into the Bottle Shop where she worked about once every week or two, the last time

being February 2, 1999, which was after the Defendant was alleged to have killed him.   On

cross-examination, the prosecuting attorney questioned Ms. Cecconi about the accuracy of

her recollection as to the date she last saw Jason McMann. He asked, "And at the time that

you reported to the police about seeing Jason just a few days before that, that you were still

under the emotional impact of learning of his death; isn't that true? Or did you get over it

that quick?" (N.T. 10/11/04, A.M., p. 144) Defense counsel objected to the form of the

question and it was stricken from the record. The prosecuting attorney stated that he did not

mean the question to sound like it did. The question, although somewhat sarcastic, would

not cause the jury to be biased or hostile toward the Defendant.

The Defendant claims in allegation seventeen that the prosecuting attorney attempted

to undermine Ms. Cecconi's testimony by asserting that she had heard rumors about him

being dead at the time she spoke to the police. (N.T. 10/11/204, A.M., p. 144- 146) The

Defendant did not object at trial to this questioning. Accordingly, he has waived this claim.

In allegation eighteen, the Defendant claims that the prosecuting attorney suggested

to Ms. Cecconi on cross-examination that she last saw the victim wearing a black t-shirt.

McMann's parents had removed this particular t-shirt from his apartment after his

disappearance. (N.T. 10/11/2004, A.M., p. 151) The Defendant claims that the prosecuting

attorney did not have a good faith basis for asking the question. However, on direct

examination, Ms. Cecconi testified that when she last saw McMann, he was "wearing a

ICHARD N. SAXTON, JR.
PRESIDENT JUDGE

COURT OF COMMON PLEAS
25TH JUDICIAL DISTRICT
OF PENNSYLVANIA
COURT HOUSE
LOCK HAVEN, PA 17745

black t-shirt with a picture of a heavy metal group on the front of it." (N.T. 10/11/2004, A.M., p. 120) The prosecuting attorney did have a good faith basis for asking the question. Furthermore, the Defendant did not object to this question, so the issue is waived.

Defendant maintains in allegation nineteen that the prosecuting attorney did not have a good faith basis for asking if she had left her employment "because of stress and disorders" connected with her pregnancy. (N.T. 10/11/2004, A.M., p. 152) Ms. Cecconi responded that she was fired from her employment because

> I had asked for a week off because I was suffering through severe postpartum depression due to my pregnancy, being taken out of my management position, losing my apartment, and trying to stay on my feet. So I was on my medication. I was going through therapy to try to get out of my relationship, to get a better job, to better myself, and to better my life.

She explained that her employer told her that if she needed a week off, she should not come back. Her testimony indicated that she had experienced stress and disorders connected with her pregnancy. Thus, the prosecuting attorney did have a good faith basis for asking the question. However, the Defendant did not object to this question at trial, so he has waived this claim.

The Defendant's twentieth allegation of prosecutorial misconduct concerns three alleged discovery violations committed by the prosecuting attorney. The Defendant claims that he was not given all of the negatives of pictures taken by Rosa Rodriguez at a party. The prosecuting attorney stated two times that he did not have the negatives, but that he would try to get them if they could be found. (N.T. 10/04/2004, A.M., p. 12-13) The Defendant also claims he was not given any bench notes or other writings made by Dr. Ross concerning the autopsy and any bills submitted by Dr. Ross. According to Pennsylvania

RICHARD N. SAXTON, JR.
PRESIDENT JUDGE

COURT OF COMMON PLEAS
25TH JUDICIAL DISTRICT
OF PENNSYLVANIA
COURT HOUSE
LOCK HAVEN, PA 17745

Rule of Criminal Procedure 573(B), the Commonwealth must provide only evidence that is within the possession and control of the attorney for the Commonwealth. Inasmuch as the negatives requested were not within the possession and control of the attorney for the Commonwealth, he was not obligated to give them to the Defendant.

On cross-examination, defense counsel asked Dr. Ross if he created bench notes or handwritten notes. Dr. Ross answered, "I may have. Sure." On redirect examination, the prosecuting attorney asked Dr. Ross if defense counsel had access to all of the information that Dr. Ross had access to. Dr. Ross responded, "Yes, they did." There is no merit to this alleged discovery violation. (N.T. 10/05/2004, A.M., p. 77-79)

With regard to the alleged discovery violation concerning the bill submitted by Dr. Ross, this allegation is simply irrelevant and has nothing whatever to do with the Defendant's guilt or innocence. It does not deserve further comment.

In the Defendant's final allegation of prosecutorial misconduct, he argues that the prosecuting attorney's comments in closing arguments were inflammatory and prejudicial. The Court has reviewed the transcript of the closing arguments and finds this argument unpersuasive. They are not the sort of comments that the higher courts have found objectionable. For example, in *Commonwealth v. Starks,* 387 A.2d 829 (Pa. 1978), the Supreme Court of Pennsylvania granted Starks a new trial because the prosecutor placed unnecessary emphasis on the involvement of drugs in the case, when that issue was only peripheral to the case. In another case, *Commonwealth v. Chambers,* 599 A.2d 630, 644 (PA. 1991), the Supreme Court of Pennsylvania cautioned that references to the Bible or other religious writing is reversible error *per se.*

RICHARD N. SAXTON, JR.
PRESIDENT JUDGE

COURT OF COMMON PLEAS
25TH JUDICIAL DISTRICT
OF PENNSYLVANIA
COURT HOUSE
LOCK HAVEN, PA 17745

13

In contrast, the statements made by the Commonwealth's attorney in the present case are all relatively mild. The prosecuting attorney, like defense counsel, must be permitted to vigorously present and argue his case. Not every sarcastic or intemperate statement constitutes prosecutorial misconduct. In this particular case, none of the Commonwealth attorney's remarks would cause the jury to have bias or hostility toward the defendant, such that they could not weigh the evidence objectively and render a true verdict. The Defendant's twenty-one allegations of prosecutorial misconduct are without any merit whatsoever.

## II. ALLEGATION THAT THE JURY POOL WAS UNCONSTITUTIONAL

In the Defendant's second issue in his Statement of Matters Complained of on appeal, he contends that the Court erred when it denied his second Motion to Declare Clinton County's Jury Pool in Violation of 42 Pa. C.S.A. §4521(a), 4521(d), 4524 and the Sixth Amendment to the United States Constitution. The Court granted the Defendant's first motion on November 24, 2003, because, at that time, the jury commissioners' master list of prospective jurors were chosen solely from the occupational tax rolls, which was not in accordance with 42 Pa. C.S.A. §4521(a). The Court ordered the jury commissioners to revise the jury pool to include voter registration lists as well as any other lists deemed appropriate under §4521(a). The jury commissioners did as the Court ordered, and the jury that was chosen in Defendant's case consisted of qualified voters from the combined voter registration list and the occupational tax rolls list. Furthermore, even if the Court had not ordered the jury commissioners to revise the pool, 42 Pa. C.S.A. §4527 states that a trial by jury and a verdict in any matter constitutes a waiver of any errors or omissions in the selection of jurors.

RICHARD N. SAXTON, JR.
PRESIDENT JUDGE

COURT OF COMMON PLEAS
25TH JUDICIAL DISTRICT
OF PENNSYLVANIA
COURT HOUSE
LOCK HAVEN, PA 17745

14

The Court also notes that the Defendant did not follow proper procedure with regard to the motion concerning the jury pool. The Court issued an Administrative Order concerning jury selection for the Defendant's trial on July 29, 2004, which was sent to all parties and counsel. According to 42 Pa. C.S.A. §4526(a), within ten days after publication of the array, a party may petition the court to stay the proceedings in the case where he is a party and to select a new jury array, or for other appropriate relief, on the ground of failure to substantially comply with this subchapter. Section 4526(c) states that this is the exclusive remedy by which a person accused of a crime may challenge an array of jurors on the ground that the array was not selected in conformity with this subchapter. The Defendant did not file his second Motion to Declare Clinton County's Jury Pool in Violation of §4521(a) and the Sixth Amendment of the United States Constitution until August 27, 2004, almost one month after publication of the array and less than three weeks before jury selection was scheduled to begin. Furthermore, the Defendant did not request a stay of the proceedings as required by §4526(a).

## III. ALLEGATION THAT THE COURT ERRED BY DENYING HIS MOTION FOR A CHANGE OF VENUE OR VENIRE

Third, the Defendant contends that the trial court erred in denying his Motion for Change of Venue or Venire based on pre-trial publicity. The murder of Jason McMann occurred in January 1999. Police arrested the Defendant in 2002 and his trial occurred in September 2004. Even if the Court were to presume pre-trial prejudice, which it does not, the Supreme Court of Pennsylvania has held that:

> A change of venue is not warranted unless the defendant also shows that the
> pre-trial publicity was so extensive, sustained and pervasive that the

RICHARD N. SAXTON, JR.
PRESIDENT JUDGE

COURT OF COMMON PLEAS
25TH JUDICIAL DISTRICT
OF PENNSYLVANIA
COURT HOUSE
LOCK HAVEN, PA 17745

community must be deemed to have been saturated with it, **and** that there was insufficient time between the publicity and the trial for any prejudice to have dissipated." *Commonwealth v. Robinson*, 864 A.2d 460, 484 (Pa. 2005).

In order to determine whether there has been a sufficient cooling period, the Court must determine what the panel of jurors has said about its exposure to the publicity. In the present case, there is no question that the vast majority of jurors had heard of the case, either by reading the newspaper or watching "America's Most Wanted" television program that aired three episodes featuring the case. The record shows that during individual voir dire, defense counsel questioned all potential jurors extensively as to their knowledge of the case, i.e., whether they had seen any of the "America's Most Wanted" programs, whether they had formed a fixed opinion, and, if so, whether they could set that opinion aside and listen to the facts of the case and decide the case solely on the testimony and evidence submitted at trial. Each juror selected indicated that he/she could hear the case fairly without bias.[3] Therefore, the Court found that there had been a sufficient cooling off period and that a change of venue or venire was not warranted.

## IV. ALLEGATION THAT THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE

Fourth, the Defendant argues that the verdict was against the weight of the evidence. The Defendant correctly states in his brief that "the determination of the weight of the evidence exclusively is within the province of the fact finder, who may believe all, part, or none of the evidence." *Commonwealth v. McCloskey*, 835 A.2d 801 (Pa. Super. 2003). Then, he goes on to criticize the jury for finding the Defendant guilty. Ultimately, it is clear that the jury believed the testimony of the Defendant's co-conspirators. Jermaine Ballard

'ICHARD N. SAXTON, JR.
PRESIDENT JUDGE

COURT OF COMMON PLEAS
25TH JUDICIAL DISTRICT
OF PENNSYLVANIA
COURT HOUSE
LOCK HAVEN, PA 17745

---

[3] The Court notes that the Defendant only used seventeen of his peremptory challenges.

and Quincy Teel both testified that they helped put Jason McMann's unconscious body into the trunk of the Defendant's car, after which they refused to participate any further. Willie Williams testified that he accompanied the Defendant to a wooded area where they left Jason McMann after the Defendant attempted to shoot him, and when the gun would not work, the Defendant beat Jason McMann with a tree limb and left him to die. Another witness, Jamie Allen, testified that the Defendant told him he killed Jason McMann. On the other hand, the jury apparently determined that the defense witnesses who supposedly saw McMann alive after January 22, 1999, were unbelievable. Likewise, the jury did not find the testimony of Neal Haskell, the defense forensic entomology expert, credible. The verdict did not shock the conscience of the Court.

## V. ALLEGATION THAT DEFENDANT WAS DENIED A TRIAL BEFORE A CROSS-SECTION OF THE COMMUNITY BY TRYING HIM BEFORE A DEATH QUALIFIED JURY DURING THE MERITS PHASE OF THE TRIAL

Fifth, the Defendant claims that trying the Defendant before a death qualified jury during the merits phase of the trial deprived him of a trial before a cross-section of the community. This argument was rejected by the Supreme Court of the United States in *Lockhart v. McCree*, 476 U.S. 162, 173-184 (1986) and the Supreme Court of Pennsylvania in *Commonwealth v. McCullum*, 602 A.2d 313, 321 (Pa. 1992). This Court sees no reason to revisit the issue.

BY THE COURT:

Richard N. Saxton, Jr.          P.J.

RICHARD N. SAXTON, JR.
PRESIDENT JUDGE

COURT OF COMMON PLEAS
25TH JUDICIAL DISTRICT
OF PENNSYLVANIA
COURT HOUSE
LOCK HAVEN, PA 17745

cc:    Ted McKnight, District Attorney
       Joseph E. McGettigan, III, Special Prosecutor
       Eric R. Linhardt, Esquire, 25 West Third Street, Suite 803, Williamsport, PA 17701
       Ronald C. Travis, Esquire, 161 West Third Street, Williamsport, PA 17701
       File

RICHARD N. SAXTON, JR.
PRESIDENT JUDGE

COURT OF COMMON PLEAS
25TH JUDICIAL DISTRICT
OF PENNSYLVANIA
COURT HOUSE
LOCK HAVEN, PA 17745

COMMONWEALTH OF PENNSYLVANIA

Subj:   **588 MDA 2005 Superior Court Opinion filed**
Date:   10/19/2006 11:14:29 A.M. Eastern Daylight Time
From:   Amy.Vaccaro@pacourts.us
To:     erossesq@aol.com, tmcknigh@kcnet.org, rsaxton@clintoncountypa.com

# NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P.65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| FABIAN DESMOND SMART | : | |
| Appellant | : | No. 588 MDA 2005 |

Appeal from the Judgment of Sentence January 24, 2005
In the Court of Common Pleas of Clinton County
Criminal No. 2002-00175

BEFORE: FORD ELLIOTT, P.J., STEVENS and KELLY, JJ.

MEMORANDUM:                    FILED: October 19, 2006

Appellant, Fabian Desmond Smart, appeals from the judgment of sentence imposed by the Clinton County Court of Common Pleas following his conviction by a jury of murder of the first degree,[1] kidnapping[2] and conspiracy.[3] We affirm.

On the night of January 22, 1999, Appellant got into a fight with the victim, Jason McMann. McMann had confronted Appellant on a half dozen previous occasions on behalf of a cousin, Jeffrey Stauffer, who had paid Appellant $6,000.00 (six thousand dollars) for marijuana which Appellant never delivered. That night, a fight began at a party in a football fraternity house at Lock Haven University, where Appellant was a football player. The fight spilled outside. Appellant beat McMann unconscious and with the aid of associates, put him in the trunk of his car, took him to a remote location some twenty miles away, tried unsuccessfully to shoot him with a pistol that would not fire, beat him again, and

COMMONWEALTH OF PENNSYLVANIA

left him there to die. McMann was reported missing shortly afterward, but his body was not discovered until several months later, in April.

When McMann disappeared, his family began a campaign to find him, posting placards, offering a reward, and trying to generate as much public interest as they could. The case attracted attention in the local media and was featured three times on the nationally televised program, "America's Most Wanted." After his body was discovered, McMann's death was originally attributed to a drug overdose. However, police investigating the disappearance and death learned of Appellant's dispute with McMann. Appellant's co-conspirators initially denied involvement but eventually confessed. Appellant was arrested in 2002, and at his trial in 2004, his co-conspirators testified against him. The death-qualified jury convicted Appellant of all charges, but deadlocked on imposing the death penalty. The trial court imposed a life sentence for the murder conviction. Post-sentence motions were denied without hearing. This timely appeal followed.

On appeal, Appellant raises five issues for our review:

DID THE INSTANCES OF PROSECUTION MISCONDUCT WHEN TAKEN TOGETHER SO TAINT THE FAIRNESS OF THE TRIAL THAT APPELLANT SHOULD BE GRANTED A NEW TRIAL IN THE INTEREST OF JUSTICE?
DID THE TRIAL COURT ERR IN DENYING APPELLANT'S MOTION TO DECLARE [THE] JURY POOL IN VIOLATION OF 42 PA.C.S.A. § 4521(A), 4521(D), 4524 AND THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION?
DID THE TRIAL COURT ERR IN DENYING APPELLANT'S MOTION FOR CHANGE OF VENUE OR VENIRE?
WAS THE VERDICT AGAINST THE WEIGHT OF THE EVIDENCE?
DID TRYING THE APPELLANT BEFORE A DEATH QUALIFIED JURY DURING THE MERITS PHASE OF THE TRIAL DEPRIVE APPELLANT OF A TRIAL BEFORE A CROSS-SECTION OF THE COMMUNITY?

(Appellant's Brief at 4).

Appellant first argues that prosecutorial misconduct deprived him of a fair trial. He cites twenty-one instances of alleged misconduct by the prosecutor,

COMMONWEALTH OF PENNSYLVANIA

jury for the penalty phase.  Citing unspecified studies, he claims that death-qualified juries are biased toward conviction.  He asserts that the procedure employed in his trial "is not only inherently unfair, but runs afoul of [his] rights under both the State and Federal Constitution [sic]."  (*Id.* at 56).

The United States Supreme Court has held that the Constitution does not prohibit states from "death qualifying" juries in capital cases.  ***See Lockhart v. McCree***, 476 U.S. 162, 173 (1986).  Our Supreme Court has also held:

> Appellant next asserts that he was deprived of a fair and impartial jury from a representative cross section of the community because his case was decided by a death-qualified jury. Specifically, appellant maintains that a death-qualified jury is more prone to convict a defendant than a jury that is not death-qualified. This precise argument has been rejected by both the United States Supreme Court and this Court. ***See Lockhart,*** [***supra***]; ***Commonwealth v. Bryant,*** [ ] 574 A.2d 590 ([Pa.] 1990); ***Commonwealth v. Sneed,*** [ ] 526 A.2d 749 ([Pa.] 1987); ***Commonwealth v. Peterkin,*** [ ] 513 A.2d 373 ([Pa.] 1986), *cert. denied,* 479 U.S. 1070 [ ] (1987).  Appellant presents no argument which persuades us to alter this course; thus, this assertion must fail.

***Commonwealth v. McCullum***, 602 A.2d 313, 321 (Pa. 1992).

Instantly, Appellant's mere bald assertion of a violation of an unspecified constitutional right fails to address the clear holdings of both ***McCree*** and ***McCullum***.  Accordingly, based on our review, and the well-reasoned opinion of the trial court, which we incorporate and adopt by reference, none of Appellant's claims merit relief and the judgment of sentence is affirmed.

Judgment of sentence affirmed.

COMMONWEALTH OF PENNSYLVANIA

October 19, 2006

[1]

   18 Pa.C.S.A. § 2502(a).

[2]

   18 Pa.C.S.A. § 2901.

[3]

   18 Pa.C.S.A. § 903.

[4]

   Of the twenty-one incidents alleged, we note the trial court sustained nine timely objections by defense counsel before an answer was given. On several occasions the prosecutor withdrew the challenged question. Defense counsel failed to make timely objections, and in some instances accepted the prosecutor's explanation of his basis for asking certain questions, resulting in the waiver of another six of his claims. In two instances, defense counsel originally objected to certain testimony but later agreed to admit it by stipulation. Twice the prosecutor assumed incorrect facts, which he later corrected and for which he apologized to the jury. The trial court gave the jury several cautionary instructions that comments and questions by counsel are not evidence. The trial court's well-reasoned opinion discusses and properly disposes of each claim. (**See** Trial Court Opinion, filed March 14, 2006, at 2-13). We therefore adopt the trial court's opinion as to these claims.

[5]

## § 4527: **Effect of verdict on jury selection errors**

Except as otherwise prescribed by general rule, errors and omissions in the selection of jurors under this subchapter shall not constitute grounds to set aside any jury verdict in any civil or criminal matter or to arrest, reverse, open or strike any judgment entered on a jury verdict, and the trial by jury and its rendition of a verdict in any matter shall constitute a waiver of all such errors and omissions.

42 Pa.C.S.A. § 4527.

[6]

   We note that, after the verdict, while the jury was deliberating on the penalty, Appellant moved for "a direct verdict of life based on the closed record." (**See** N.T. Trial, 10/20/04, at 3). The trial court denied the motion.

IN THE SUPREME COURT OF PENNSYLVANIA
HARRISBURG DISTRICT

COMMONWEALTH OF PENNSYLVANIA        :
                                    : SUPERIOR COURT
              v.                    : No. 588 MDA 2005
                                    :
FABIAN D. SMART                     : LOWER COURT
         Defendant/Appellant        : No. 175-02

CERTIFICATE OF SERVICE

I, Eric R. Linhardt, Esquire, hereby certify that I have served one (1) copy

of the foregoing Petition For Allowance of Appeal upon:

Joseph E. McGettigan, Esquire
Office of the District Attorney
322 East Water Street
Lock Haven, Pa  17745

by first class, U.S. Mail, postage prepaid, on this _17th_ day of _November_ 2006.


Eric R. Linhardt, Esquire
Pa. Id. No. 59981

25 West Third Street, Suite 803
Williamsport, Pa 17701
Telephone: (570) 320-7788